UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ATTABOTICS, INC.,

               Plaintiff,

      vs.

URBX, INC.,

          Defendant

Civ. A. No. 1:21-cv-11051-ADB


ORAL ARGUMENT REQUESTED


**DEFENDANT URBX INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

## Table of Contents

**INTRODUCTION** ........................................................................................................... 1

**BACKGROUND** ............................................................................................................ 2

**LEGAL STANDARD** .................................................................................................... 6

**ARGUMENT** ................................................................................................................. 7

    I.    Accepting the Pleaded Facts, the Accused System Cannot Literally Infringe ................ 7

        A.    All Challenged Claims Require a Single Vehicle that Travels
            in Three Dimensions ..................................................................................... 8

        B.    The Complaint Concedes That the Accused Urbx System
            Does Not Include a Single Vehicle that Travels in Three Dimensions ................... 11

    II.    Accepting the Pleaded Facts, the Accused System Cannot Infringe
        Under the Doctrine of Equivalents ................................................................ 14

        A.    The All Elements Rule Precludes Equivalence ......................................... 14

            1.    Equivalence Would Vitiate the Plain Claim Language ......................... 14

            2.    The Patents' Criticism of Two-Robot Systems Confirms Vitiation ............ 16

        B.    The Function/Way/Result Test Precludes Equivalence ............................. 17

        C.    Courts Regularly Grant 12(b)(6) Motions on the Doctrine of Equivalents ............. 19

    III.    Amending the Complaint Would Be Futile ................................................... 20

## Table of Authorities

**Cases**

*Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114 (1st Cir. 2009) .............................. 20

*ACQIS, LLC v. EMC Corp.*, No. 14-cv-13560-ADB,
2021 U.S. Dist. LEXIS 55945 (D. Mass. Feb. 19, 2021) ......................................................... 6

*Adams v. Wells Fargo Bank*, No. 17-12092-FDS,
2018 U.S. Dist. LEXIS 197766 (D. Mass. 2018) (Saylor, J.) .................................................. 20

*Al-Site Corp. v. Bonneau Co.*, 1994 U.S. App. LEXIS 6188 (Fed. Cir. 1994) ............................. 18

*Arsus v. Tesla Motors*, 2020 U.S. Dist. LEXIS 171780 (N.D. Cal. 2020) ................................... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 6

*Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333 (Fed. Cir. 2004) ..................................... 7, 16

*Atlas IP. LLC v. S. Co.*, 2017 U.S. Dist. LEXIS 101256 (S.D. Fla. 2017) ................................... 20

*Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326 (Fed. Cir. 2014) ............................................ 15

*Becton, Dickinson and Co. v. Tyco Healthcare Grp., LP*,
616 F.3d 1249 (Fed. Cir. 2010) ................................................................................................. 6

*Bot M8 LLC v. Sony Corp. of Am.*,
2021 U.S. App. LEXIS 20624 (Fed. Cir. July 13, 2021) ..................................................... 6, 12

*Cumberland Pharm., Inc. v. Sagent Agila LLC*,
2013 U.S. Dist. LEXIS 156834 (D. Del. 2013) ................................................................. 14, 20

*Eagle Pharm., Inc. v. Hospira, Inc.*, 424 F. Supp. 3d 355 (D. Del. 2019) ................................... 20

*Ethicon Endo-Surgery, Inc. v. Covidien LP*,
2020 U.S. Dist. LEXIS 72133 (D. Mass. 2020) ....................................................................... 11

*Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005) ..................... 7, 17, 18

*Healthier Choices Mgmt. Corp. v. Philip Morris United States*,
2021 U.S. Dist. LEXIS 139224 (N.D. Ga. July 23, 2021) ........................................... 13, 14, 20

*Inner-Tite Corp. v. Dewalch Techs., Inc.*
2009 U.S. Dist. LEXIS 143845 (D. Mass. 2009) (Saylor, J.) ........................................ 7, 16, 18

*Iris Connex, LLC v. Acer Am. Corp.*, 2016 U.S. Dist. LEXIS 118988 (E.D. Tex. 2016) ............ 19

*Lighthouse Consulting Grp., LLC v. BB&T Corp.*, 476 F. Supp. 3d 532 (W.D. Tex. 2020) ....... 20

*Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir. 2000) .......................... 16

*Quest Integrity USA, LLC v. Clean Harbors Indus. Servs.*,
   2015 U.S. Dist. LEXIS 95148 (D. Del. 2015) ........................................................... 9

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
   2020 U.S. Dist. LEXIS 215341 (E.D. Tex. 2020) ............................................. 12, 13

*Robinson v. Nat'l Collegiate Student Loan Tr.*, No. 20-cv-10203,
   2021 U.S. Dist. LEXIS 68342 (D. Mass. Apr. 7, 2021) ............................................ 6

*Sage Prods. v. Devon Indus.*, 126 F.3d 1420 (Fed. Cir. 1997) .................................... 17

*SciMed Life Sys. V. Advanced Cardiovascular Sys.*, 242 F.3d 1337 (Fed. Cir. 2001) ............ 7, 17

*Sunbeam Prods., Inc. v. HoMedics, Inc.*, 412 F. App'x 263 (Fed. Cir. 2010) ........................ 17

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340 (Fed. Cir. 2010).................................. 15

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem.*, 520 U.S. 17 (1997)................................. 7, 19

## INTRODUCTION

Plaintiff Attabotics' Complaint should be dismissed because its own factual allegations establish that Defendant Urbx cannot infringe.  Both parties offer automated fulfillment center systems, but that is where the similarity ends.  Attabotics' system and its asserted patents require a fleet of ***identical vehicles*** that can travel in three dimensions to "access every storage location" in a three-dimensional grid and deliver items to an external working station.  (Dkt. No. 1, ¶ 12; '343 Patent, 4:15-16, 16:32-39; '166 Patent, 6:38-51.)  By contrast, Attabotics' Complaint pleads that Urbx has a dual robot system, wherein ***two distinct types of robots*** cooperate to retrieve and deliver items.  (*E.g.*, Dkt. No. 1, ¶¶ 18-31.)

By admitting this fundamental distinction, Attabotics has pleaded itself out of court, and its infringement claims must be dismissed.  Namely, the claims of the Asserted Patents expressly require a single, general-purpose vehicle that can move left/right (i.e., along an X-axis), forward/back (i.e., along a Y-axis), *and* up/down (i.e., along a Z-axis).  However, Attabotics' Complaint and exhibits concede that Urbx employs special-purpose wheeled "GridBots" that move only laterally (in the XY-plane) and "TowerBot" dumbwaiters that move only vertically (along the Z-axis).  Accordingly, Urbx cannot literally infringe at least claims 1-11 and 17-23 of the '343 Patent, or any claims of the '166 Patent (collectively, the "challenged claims").

The doctrine of equivalents cannot save Attabotics' claims.  As a matter of law, the "all elements rule" precludes equivalency, because expanding claims that expressly *require* three-dimensional motion to include vehicles that *cannot* perform three-dimensional motion would effectively vitiate claim elements.  That result applies with particular force here, where the patentees did not fail to foresee two-robot systems, but instead actively criticized such systems in the specification.  And, even if Attabotics could survive this threshold constraint, the Court can

1

apply function/way/result analysis—and common sense—to hold that the one- and two-robot systems at issue are fundamentally different solutions, not equivalents.

In short, Attabotics' Complaint asserts a strained infringement theory that is rebutted by its own factual pleadings.  At least with regard to the challenged claims, it should be dismissed.

## BACKGROUND

Counts I and II of Attabotics' Complaint assert infringement of U.S. Patent Nos. 10,604,343 ("the '343 Patent") and 11,008,166 ("the '166 Patent) (collectively, the "Asserted Patents").[1]  Although these patents are not in the same family, as a practical matter they share much of the same specification.  The '343 Patent is a continuation of Application No. PCT/CA2016/050484 (published as WO2016/172793) (the "PCT Application"), and therefore shares its specification with the PCT Application.[2]  ('343 Patent, p. 1, 1:6-13.)  The '166 Patent, in turn, incorporates by reference the entirety of the PCT Application.  ('166 Patent, 1:24-25.)  Accordingly, the patentees' admissions in the '343 Patent are equally binding with respect the '166 Patent, and the patentees' statements in the '166 Patent characterizing the shared aspects of the specification inform the meaning and scope of the '343 Patent.

The Asserted Patents disclose and claim "a fleet of *identical* robotic storage/retrieval vehicles" (red below) that navigate above, below, and within a three-dimensional storage grid to retrieve storage bins and (at least in the case of the '166 Patent) deliver them to external working stations.  ('343 Patent, 4:15-16.)[3]  The grid comprises an array of hollow "shafts" surrounded on four sides by storage "cells" containing storage "bins."  (*E.g.*, '343 Patent, 5:15-58.)

---

[1] The '343 and '166 Patents are available at Dkt. Nos. 1-1 and 1-4, respectively.

[2] This application is also known as U.S. App. No. 15/568,646, which issued as U.S. Pat. No. 10,336,540.

[3] Except where otherwise stated, all emphases herein are added.

 

('343 Patent, Figs. 2, 5.)  The storage/retrieval vehicles include standard "conveyance wheels" (green below) that travel on "gridded track layouts [green below] at the top and bottom of the three dimensional grid" to facilitate movement left/right (i.e., along the X-axis) and forward/back (i.e., along the Y-axis).  (*Id.* at 9:1-5, 9:44-10:38.)  Hence, each vehicle can move *between* all of the hollow shafts.  (*Id.* at 16:32-17:33.)  The storage/retrieval vehicles further include toothed "pinion wheels" (purple below) that mate with "rack teeth" (purple below) within each hollow shaft to enable movement up/down (i.e., along the Z-axis).  (*Id.* at 7:41-45; 13:17-14:8.)  Hence, each vehicle can also move vertically *within* all of the hollow shafts.  (*Id.* at 16:32-17:33.)

 

('343 Patent, Figs. 7, 12.)

The '166 Patent additionally describes embodiments wherein the same vehicles deliver payloads to "working stations" (pink below) connected to the lower gridded track, but "situated outside the . . . footprint" of the three-dimensional grid.  (*E.g.*, '166 Patent, 6:11-37, 10:21-35.)





('166 Patent, Figs. 3, 5.)

The Asserted Patents make clear that the use of a *single type of all-purpose vehicle* capable of moving between shafts (i.e., in the XY-plane) and vertically within shafts (i.e., along the Z-axis), and thereby performing the entire storage/retrieval operation, is a requirement of the patentees' purported innovation.  As one example, the patentees explain that the invention is:

> a novel solution for goods-to-man order fulfilment, where a robotic storage/retrieval vehicle **capable of travel in three dimensions** provides **the sole means of storage unit conveyance** throughout an entire order picking operation, from the initial retrieval of the storage unit from anywhere in the three dimensional space of the grid, through delivery of the storage unit to the working station . . . **without the storage unit ever being offloaded** from the robotic storage/retrieval vehicle and conveyed by a separate conveyor, turntable or other transitional mechanism.

('166 Patent, 6:38-51.)  Similarly, "[i]n summary of the disclosed embodiments," the patentees explain that:

> The system comprises a vehicle or robot that manoeuvres **around the top and bottom** of the grid **and** **vertically through the void or shaft** and locates a bin to retrieve."

('343 Patent, 16:32-39.)  And, in summarizing the shared specification, the patentees explain:

> "**The** storage/retrieval vehicles travel **horizontally in two dimensions** on both a gridded upper track layout disposed above the three-dimensional array of storage locations, and a gridded lower track layout disposed at ground level below the array of storage locations.  **The same** storage/retrieval vehicles also traverse the structure **in the third vertical dimension through vertically upright shafts** that join together the upper and lower track layouts."

('166 Patent, 1:30-38.)  As further detailed below, the language of the challenged claims is

4

similarly limited to systems employing a single type of all-purpose vehicle.

Although the Asserted Patents require a *single type* of general-purpose vehicle, Attabotics' Complaint pleads that the accused Urbx system uses *two distinct types* of special-purpose robots.  As Attabotics explains, "URBX has a **dual robot system**, one referred to as a tower bot and another referred to as a grid bot."  (Dkt. No. 1-3, at 1; Dkt. No. 1, ¶¶ 20, 26.)  Each TowerBot is essentially a stationary dumbwaiter with a winch "positioned atop the upright central shafts" and a handler that is "lowered down into the central shaft."  (Dkt. No. 1-3, at 2; Dkt. No. 1, ¶¶ 18-25.)  Unlike the claimed vehicles, each TowerBot "remains in [a single] upright central shaft," and cannot move laterally in the XY-plane between shafts or to/from working stations.  (Dkt. No. 1-3, at 2; Dkt. No. 1, ¶¶ 18-25, 31 (link depicting "Towerbots: white").)  Instead, "URBX also has a GridBot" that moves "in an X-direction" and "in a Y direction" to "convey[] the items from the central voids to the picking stations."  (Dkt. No. 1, ¶¶ 26-27.)  The GridBot cannot move vertically (i.e., in the Z-direction) within a shaft.  (*Id*. at ¶¶ 26-30, ¶ 31 (link depicting "Gridbots: green").)  Rather than use a single vehicle to convey storage bins in three dimensions, the TowerBot transports bins *vertically*, and, at the bottom of each shaft, that "tower bot convey[s] a storage unit onto the grid bot" for further transportation *laterally*.  (Dkt. No. 1-3, at 1; Dkt. No. 1, ¶¶ 20-21, 26-31.)





(Dkt. No. 1, ¶ 18 (TowerBots yellow; constituent winch and handler pairs blue).)

(Dkt. No. 1-3, at 1 ("tower bot [left] conveying a storage unit onto the grid bot [right]").)

Thus, Attabotics' Complaint concedes that neither the TowerBot nor the GridBot constitute a vehicle "conveyable via the gridded track system *to, from and through* the upright central shafts" ('343 Patent, Claim 23) as all challenged claims require in one form or another.

## LEGAL STANDARD

"In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts . . . ." *Robinson v. Nat'l Collegiate Student Loan Tr.*, No. 20-cv-10203, 2021 U.S. Dist. LEXIS 68342, at *5-6 (D. Mass. Apr. 7, 2021). "The alleged facts must be sufficient to 'state a claim to relief that is plausible on its face.'" *Id.* at *6. "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly. Thus, 'if any claim limitation is absent from the accused device, there is no literal infringement as a matter of law.'" *ACQIS, LLC v. EMC Corp.*, No. 14-cv-13560-ADB, 2021 U.S. Dist. LEXIS 55945, at *9-10 (D. Mass. Feb. 19, 2021) (quoting *Becton, Dickinson and Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010)). Under Fed. R. Civ. P. 12(b)(6), where a Plaintiff's pleaded "factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim." *Bot M8 LLC v. Sony Corp. of Am.*, 2021 U.S. App. LEXIS 20624, at *22 (Fed. Cir. July 13, 2021) (emphasis in original). Accordingly, "a patentee may subject its [infringement] claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Id*. at *1.

In limited circumstances, where there is no literal infringement, an accused product may still infringe under the doctrine of equivalents if each element not literally embodied is present in an equivalent form. *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chem.*, 520 U.S. 17, 29

(1997). Equivalence is evaluated at the limitation level—not the overall claim level—and requires that each limitation "performs substantially the same function in substantially the same way to achieve the same result." *Inner-Tite Corp. v. Dewalch Techs., Inc.* 2009 U.S. Dist. LEXIS 143845, at *22 (D. Mass. 2009) (Saylor, J.) (citing *Warner-Jenkinson*, 520 U.S. at 39).

Because any expansion beyond the literal scope of a claim "detracts from the public-notice function of patent claims," several "rules of law have emerged to constrain when and how the doctrine of equivalents is applied." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005). Relevant here, the "all elements rule" (or "all limitations rule") precludes any theory of equivalence that would "effectively eliminate [an] element" of the asserted claim. *See Warner-Jenkinson*, 520 U.S. at 29. The all elements rule applies with particular force where a patent disavows the supposedly equivalent structure. *See SciMed Life Sys. V. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001) ("A particular structure can be deemed outside the reach of the doctrine of equivalents because that structure is clearly excluded from the claims whether the exclusion is express or implied."). Such disavowal is established where a patent specification criticizes a feature. *See Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004) ("Where the general summary or description of the invention describes a feature of the invention . . . and criticizes other products . . . that lack the same feature, this operates as a clear disavowal of these other products. . . .").

Where equivalence would violate the all elements rule, "partial or complete judgement should be rendered by the court, as there would be no further material issue for the jury to resolve." *Warner-Jenkinson Co.*, 520 U.S. at 39, n.8.

## **ARGUMENT**

### I.     **Accepting the Pleaded Facts, the Accused System Cannot Literally Infringe**

The pleaded facts not only fail to establish infringement, they preclude it.

7

### A.   All Challenged Claims Require a Single Vehicle that Travels in Three Dimensions

The Asserted Patents expressly and repeatedly state that the purported invention is a storage grid using a *single type of all-purpose vehicle* capable of moving between shafts (i.e., in the XY-plane) and vertically within shafts (i.e., along the Z-axis).  For instance, the patentees summarized the shared PCT specification by explaining that "**[t]he** storage/retrieval vehicles travel *horizontally in two dimensions* [and] . . . . **The same** storage/retrieval vehicles also traverse the structure in the *third vertical dimension* through vertically upright shafts." ('166 Patent, 1:30-38.)  Similarly, at the end of the '343 Patent, "[i]n summary of the disclosed embodiments," the patentees explained that "[t]he system comprises a vehicle or robot that manoeuvres *around the top and bottom of the grid* **and** *vertically through the void or shaft*." ('343 Patent, 16:32-39.)  The patentees even clarified that their purported "novel solution" is "a robotic storage/retrieval vehicle *capable of travel in three dimensions* [that] *provides the sole means of storage unit conveyance* throughout an entire order picking operation . . . *without the storage unit ever being offloaded* from the robotic storage/retrieval vehicle." ('166 Patent, 6:38-51.)  The Asserted Patents are replete with similar examples, including the following:

- "a fleet of **identical** robotic storage/retrieval vehicles that *horizontally traverse* gridded track layouts at the top and bottom of the array, **and** *vertically traverse* between the upper and lower gridded track layouts" ('343 Patent, 4:13-20.)

- "robotic storage/retrieval vehicles . . . travel *over the upper and lower track layouts* **and** *through the shafts*" ('166 Patent, 5:22-27.)

- "The vehicle or robot now travels *upwards in the Z direction* on the outside perimeter of the grid structure, **and** repeats the process of *moving in the X and Y direction* to its next assigned bin location" ('343 Patent, 17:29-33.)

- "the robotic storage/retrieval vehicle . . . with . . . wheel units that are used to *horizontally* **and** *vertically* traverse the grid structure at the track layouts and shafts" ('343 Patent, 4:29-33; *see also, e.g.,* '343 Patent, Abstract.)

Indeed, the entire shared specification is devoted to a description of the structure and function of this vehicle and a storage grid with tracks, rack teeth, and dimensions specifically designed to allow the vehicle to travel in three dimensions.  (*See generally*, '343 Patent.)  The Asserted Patents never purport to disclose a system employing multiple types of special purpose robots.

Consistent with this disclosure, every challenged independent claim of the '343 Patent expressly requires a *single type of vehicle* capable of moving <u>both</u> (1) vertically (i.e., along the Z-axis) within shafts; <u>and</u> (2) left/right and forward/back (i.e., in the XY-plane) between shafts:

| '343 Claim | Limitation Requiring Three-Dimensional Movement |
|---|---|
| '343 Claim 1 | "said storage/retrieval vehicle is configured to travel ***to and from the upright central shafts*** on said gridded track system, <u>**and**</u> is also configured to access the storage locations from ***within said upright central shafts***" |
| '343 Claim 11 | "a vehicle or robot, configured to (a) ***move horizontally in two dimensions*** at the top and/or bottom level, (b) ***move vertically through the void spaces*** in the grid structure, <u>**and**</u> (c) from a position within the void space of any one of the cells, deposit or ***retrieve a storage bin*** to or from any one of the four storage locations around the void space" |
| '343 Claim 19 | "storage/retrieval vehicle conveyable via the gridded track system ***to, from the upright central shafts to access the storage locations therefrom*** . . . <u>**said**</u> storage/retrieval vehicle is ***operable*** in a plurality of different working positions ***inside the shaft***"[4] |
| '343 Claim 23 | "storage/retrieval vehicle conveyable via the gridded track system ***to, from*** <u>**and**</u> ***through*** the upright central shafts . . . <u>**said**</u> storage/retrieval vehicle is ***operable*** in a plurality of different working positions ***inside the shaft***" |

As shown below, the claims of the '166 Patent also recite such three-dimensional movement.  *Additionally*, the '166 claims require that the vehicle transports storage units the

---

[4] The phrase "*to, from* the upright central shafts" is a typographical error, and should state "to, from *and through* the upright central shafts."  During prosecution, the patentees added claims 19 and 23 (originally numbered as claims 20 and 24) as "copies of objectionable, but otherwise allowable, claims 6 and 10, rewritten in independent form and incorporating the subject matter of original independent claim 1."  (Ex. 1, at 9.)  Original independent claim 1—and correctly copied independent claim 23 (originally 24)—both read "to, from, *and through* the upright central shafts."  (Ex. 1, at 2, 7.)  Independent claim 19 (originally 20) was incorrectly transcribed, leaving only a fragment of the phrase.  *See, e.g., Quest Integrity USA, LLC v. Clean Harbors Indus. Servs.*, 2015 U.S. Dist. LEXIS 95148, at *4, n.4 (D. Del. 2015) ("The prosecution history . . . is a public document that the court may rely upon in deciding this motion to dismiss.").  Under either transcription, the claimed vehicle must be conveyable "to" and "from" "the upright central shafts" (i.e., laterally in the XY-plane) and vertically (i.e., along the Z-axis) to be "operable . . . inside the shaft" and "access the storage locations therefrom."

entire distance from storage locations in the shafts to working stations.  Because this operation

requires traveling vertically within a shaft to retrieve a storage unit, and then laterally to deliver

the storage unit to a "working station . . . connected to the lower track layout" and "situated

outside the two-dimensional footprint" of the grid, this limitation sets forth an additional,

independent requirement of motion in three dimensions.  ('166 Patent, 10:21-29, 11:4-35.)

| '166 Claim | Limitations Requiring (1) Three-Dimensional Movement and (2) Transit to/from a Working Station |
|---|---|
| '166 Claim 1 | <u>Three-Dimensional Movement</u>: "one or more storage/retrieval vehicles are ***conveyable in two directions over said two-dimensional area*** . . . **<u>and</u>** a plurality of ***upright shafts*** . . . ***through which*** the storage locations of said storage column are ***accessible by the one or more storage/retrieval vehicles***"<br><br><u>Movement to/from a Working Station</u>: "at least one working station residing alongside the gridded three-dimensional structure and outside the two-dimensional area of the lower track layout . . . whereby ***conveyance*** of the storage units ***between the storage locations and the working station is performable* <u>*entirely*</u> *by said one or more storage/retrieval vehicle***" |
| '166 Claim 8 | <u>Three-Dimensional Movement</u>: "a gridded track layout that occupies a two-dimensional area and on which the storage/retrieval vehicles are **conveyable in two directions** over said two-dimensional area . . . **<u>and</u>** a plurality of ***upright shafts*** . . . ***through which*** the storage locations of said storage column are ***accessible by the storage/retrieval vehicles***"<br><br><u>Movement to/from a Working Station</u>: "***conveyance*** of the storage units ***between the at least one working station and the storage locations*** in the gridded three-dimensional structure ***is performed* <u>*solely*</u> *by said storage/retrieval vehicles***" |
| '166 Claim 9 | <u>Three-Dimensional Movement</u>: "a three-dimensional structure comprising a three-dimensional array of storage locations sized to accommodate placement and storage of storage units therein, said ***storage vehicles being configured to navigate within said* <u>*three dimensional*</u> *structure***"<br><br><u>Movement to/from a Working Station</u>: "storage vehicles being configured to . . . ***place and retrieve said storage units to and from said storage locations***; **<u>and</u>** at least one ***working station to which retrieved storage units from the storage locations are conveyable by said storage/retrieval vehicles***" |

Because dependent claims incorporate all limitations of the independent claims they

depend from, all dependent claims in the Asserted Patents are similarly limited.  *See Ethicon*

*Endo-Surgery, Inc. v. Covidien LP*, 2020 U.S. Dist. LEXIS 72133, at *25 (D. Mass. 2020) (Sorokin, J.) ("If an independent claim is not infringed, there can be no infringement of any dependent claims that depend from that claim.").

### B.   The Complaint Concedes That the Accused Urbx System Does Not Include a Single Vehicle that Travels in Three Dimensions

Attabotics' Complaint concedes that the accused Urbx system does not include a single vehicle that travels in three dimensions, as the claims require.  In Attabotics' words, "URBX has a ***dual robot system***, one referred to as a tower bot and another referred to as a grid bot."  (Dkt. No. 1-3, at 1; Dkt. No. 1, ¶¶ 20, 26.)  Each TowerBot is essentially a dumbwaiter that "remains in [a single] upright central shaft."  (Dkt. No. 1-3, at 2; Dkt. No. 1, ¶¶ 18-25, 31.)  Attabotics pleads that the TowerBot can be "lowered down into the central shaft" (i.e., along the Z-axis).  However, the the TowerBot cannot move laterally (i.e., in the XY-plane), and must therefore "convey . . . storage unit[s] onto the grid bot" for transportation to working stations.  (Dkt. No. 1-3, at 1-2; Dkt. No. 1, ¶¶ 18-26, 29, 31).  Attabotics' Complaint acknowledges that the GridBot is similarly limited.  Namely, the GridBot can move "in an X-direction" and "in a Y-direction," but cannot ascend into the vertical shafts to retrieve items.  (Dkt. No. 1, ¶¶ 26-31.)  Because only the GridBots travel horizontally, only the GridBots could "convey storage units to working stations that are alongside the gridded three-dimensional strucutre [sic] and outside the dimensional area."  (Dkt. No. 1-3, at 3; Dkt. No. 1, ¶¶ 26-31.)

Assuming the truth of Attabotics' allegations of fact, as the Court must under Rule 12(b)(6), Attabotics has failed to state a claim for infringement.  First, all challenged claims require a single vehicle capable of transporting a storage bin both: (1) left/right and back/forth (i.e., in the XY-plane); and (2) vertically within a shaft (i.e., along the Z-axis).  Attabotics' Complaint concedes that the accused Urbx system lacks such a vehicle.  At most, Attabotics has

pleaded that the accused Urbx system includes a TowerBot that is incapable of the former, and a GridBot that is incapable of the latter.  Second, as an additional independent basis of non-infringement, all challenged claims of the '166 Patent require that the same vehicle must move storage units from a storage cell within a vertical shaft to a working station.  However, Attabotics concedes that only the TowerBot retrieves items from within a vertical shaft, and only the GridBot delivers items to working stations outside the grid structure.  Hence, the accused Urbx system does not practice at least these elements, and therefore cannot literally infringe.

Where a plaintiff pleads facts that defeat its infringement claim, courts routinely grant motions to dismiss on the pleadings.  Just two months ago in *Bot M8 LLC v. Sony Corp. of Am.*, 2021 U.S. App. LEXIS 20624 (Fed. Cir. July 13, 2021) the Federal Circuit affirmed a 12(b)(6) dismissal in a strikingly similar situation.  There, the asserted claim recited an "authentication program" stored on a "'board including a memory,' separate from the 'motherboard' and its memory."  *Id*. at *21-22.  However, the complaint pleaded that the authentication program was stored on flash memory "in the PS4 'motherboard.'"  *Id*. at 22.  Because this allegation was "actually inconsistent with and contradict[ed] infringement," the Federal Circuit affirmed dismissal.  *Id*.  Similarly here, Attabotics' assertions that Urbx employs only TowerBots and GridBots—neither of which is capable of three-dimensional motion—says "too much rather than too little, to the point that [Attabotics] has essentially pleaded itself out of court."  *Id*. at 21.

The Court reached the same conclusion in *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, 2020 U.S. Dist. LEXIS 215341 (E.D. Tex. 2020), a case relating to payment ticket technology.  There the asserted claim required "supplying, by the [user], of **an alpha-numeric-symbolic PIN**" and "activating, by the administrator, of said *QwikCash* ticket by associating **said PIN**."  *Id*. at *3.  However, plaintiff's complaint alleged that the accused

payment system satisfied the latter limitation by issuing a PIN at the time of the card's creation, and *before the user supplied a PIN*.  *Id*. at *9-11.  The court held that this pleading was inconsistent with infringement because "the use of the term **'said PIN'** in the issuing step necessitates that the PIN in the issuing step be the **same PIN** [supplied by the user]."  *Id.* at * 12.  Similarly here, the challenged claims recite, for instance, "**storage/retrieval vehicles** . . . conveyable in **two directions** over said two-dimensional area . . . and . . . upright shafts . . . **accessible by the one or more storage/retrieval vehicles**."  ('116 Patent, Claims 1, 8.)  As in *Qwikcash*, the antecedent basis provided by "the" indicates that the same vehicle that is conveyable laterally in two dimensions must also be conveyable vertically within a shaft.  Because the Complaint concedes that this is not the case in the Urbx system, dismissal is warranted.  Moreover, as in Qwikcash, "the Court need not engage in claim construction to decide [this] dismissal motion because [Attabotics'] allegations of direct infringement are patently unworkable."  *Qwikcash*, 2020 U.S. Dist. LEXIS 215341 at *12-13.

Similarly, less than two months ago in *Healthier Choices Mgmt. Corp. v. Philip Morris United States*, 2021 U.S. Dist. LEXIS 139224 (N.D. Ga. July 23, 2021), the court dismissed an infringement action asserting patent claims reciting a "combustion reaction" limitation.  Although the plaintiff alleged that the accused electronic pipe employed combustion, plaintiff attached to its complaint an exhibit including "evidence demonstrating that there [was] no combustion" in the accused product.  *Id*. at *12.  Because the court could "accept as true only those well-pled facts that [did] not conflict with [the exhibit]," it found that plaintiff had "not plausibly alleged that the [accused product] practices a combustion reaction," and granted the plaintiff's motion to dismiss.  *Id*. at *13-14.  Moreover, the Court explained "no claim construction [was] necessary to determine that a claim limitation requiring 'a combustion

13

reaction' means that some sort of combustion must occur." *Id*. at \*14-15.  Dismissal is even more appropriate here, because Attabotics' pleadings are not merely *contradicted* by evidence in an exhibit.  Rather, the pleadings and exhibits *uniformly concede* that the accused Urbx system does not satisfy every claim limitation.  And claim construction is equally unnecessary here because, under any interpretation, a vehicle that *must* move "***horizontally* in two dimensions** at the top and/or bottom level . . . [and] *vertically* through the void spaces" ('343 Patent, Claim 11)—as all the challenged claims require in one form or another—does not encompass vehicles that *cannot* move horizontally and vertically.  *Cumberland Pharm., Inc. v. Sagent Agila LLC*, 2013 U.S. Dist. LEXIS 156834, at \*5-6 (D. Del. 2013) (dismissing because "[n]o claim construction is necessary in order to determine that 'free from a chelating agent' means that a claimed composition may not include a chelating agent"); *see also Arsus v. Tesla Motors*, 2020 U.S. Dist. LEXIS 171780, at \*4 (N.D. Cal. 2020) (dismissing a complaint that "effectively admit[ted]" non-infringement).

## II.   Accepting the Pleaded Facts, the Accused System Cannot Infringe Under the Doctrine of Equivalents

The doctrine of equivalents cannot save Attabotics' infringement claims.  <u>First</u>, the all elements rule precludes application of the doctrine of equivalents as a matter of law.  <u>Second</u>, and independently, because there is no pertinent dispute of fact here, the function/way/result test—as well as common sense—further precludes equivalence as a matter of law.

### A.   The All Elements Rule Precludes Equivalence

#### 1.   Equivalence Would Vitiate the Plain Claim Language

The all elements rule—which bars the use of equivalence to "eliminate" or "vitiate" a particular claim element—prevents application of the doctrine of equivalents here as a matter of

14

law.[5]  *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1355 (Fed. Cir. 2010) (explaining that "[t]he all-elements rule" is "a question of law").

Any equivalence argument that Attabotics could raise would violate the all elements rule by effectively vitiating or eliminating claim limitations.  As detailed in the tables above, every challenged claim recites limitations directed to a "storage/retrieval vehicle" that specifically ***can*** move laterally in an XY-plane to/from shafts and vertically in a Z-axis within the shafts to retrieve items.  Rewriting these claims to encompass robots that admittedly ***cannot*** perform both operations would vitiate these limitations and encompass specifically excluded technologies.  For instance, a "storage/retrieval vehicle conveyable via the gridded track system ***to, from <u>and</u>*** ***through*** the upright central shafts" ('343 Claim 23) specifically excludes a robot that travels only "to and from" or only "through" a shaft.  Similarly, stretching the language "one or more storage/retrieval vehicles are ***conveyable in two directions*** over said two-dimensional area . . . <u>**and**</u> a plurality of ***upright shafts . . . through which*** the storage locations . . . are ***accessible by*** ***<u>the</u> one or more storage/retrieval vehicles***" ('166 Patent, Claim 1) to encompass a GridBot would effectively eliminate all of the claim language after the "and."  Alternatively, twisting this language to cover a TowerBot would effectively strike the claim language before the "and."  And asserting infringement by a TowerBot and GridBot in combination would rewrite the claim language entirely to introduce two new, unclaimed special-purpose robots.

Moreover, in various forms, the challenged claims of the '166 Patent all expressly require "conveyance of the storage units between the storage locations and the working station is performable <u>**entirely**</u> by said one or more storage/retrieval vehicles."  ('166 Patent, Claim 1; *id*.

---

[5] The "specific exclusion principle" is a corollary to vitiation, which precludes application of equivalence to capture a structure that "is the opposite of, or inconsistent with, the recited limitation."  *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1335 (Fed. Cir. 2014).  It provides another independent basis for denying equivalence here.

at Claim 8 ("performed **solely** by said storage/retrieval vehicles"); *id*. at Claim 9 ("storage units [conveyable] to and from said storage locations; and at least one working station . . . by **said** storage/retrieval vehicles").)  Expanding these claims to cover systems lacking such a vehicle would effectively strike this plain, exclusionary language.  That is impermissible.

The Federal Circuit addressed similar overreach in *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir. 2000).  There, plaintiff argued that the doctrine of equivalents should expand the term "majority" to include a near-majority of "47.8%."  *Id*. at 1105-06.  Rejecting the patentee's argument, the Court explained that "to allow what is undisputedly a minority (*i.e.*, 47.8%) to be equivalent to a majority would vitiate the" "majority" claim limitation because it would render the word "majority" superfluous.  *Id*. at 1106 ("[i]f a minority could be equivalent to a majority, this limitation would hardly be necessary").  Similarly here, the patentees are constrained by their choice to limit the claims to single-vehicle systems using express, exclusionary language, such as "exclusively," "solely," "*said* storage/retrieval vehicles," and "*the* one or more storage/retrieval vehicles."  A two-robot system is no more a one-robot system than a minority is a majority.

### 2.  The Patents' Criticism of Two-Robot Systems Confirms Vitiation

The all elements rule applies with particular force here, because the patentees' criticism of two-robot systems confirms that its use of exclusionary language narrowing the claims to one-vehicle systems was a *deliberate choice*.  *See Inner-Tite*, 2009 U.S. Dist. LEXIS 143845, at *29 ("If a skilled patent drafter should have foreseen the limiting potential of narrow and precise claim language, an equivalents analysis may be precluded.").  As a matter of law, a "specification's clear disavowal of [a feature] precludes the application of the doctrine of equivalents to recapture the [feature]."  *Astrazeneca*, 384 F.3d at 1342.  Here, the Asserted Patents expressly denigrate two-robot systems.  For instance, in criticizing solutions employing

16

multiple vehicle types, the patentees explained that:

> A potential **drawback** is the need for **two distinct vehicle types** that separately access and then remove the target bin.

('343 Patent, 2:5-6.)  The patentees further explained that their claimed invention:

> **avoid[s] the space and material inefficiencies associated with prior art techniques**, such as space intensive sortation conveyors, where the retrieval step is performed by **one fleet of machines**, and then sortation is performed downstream at **a second stage of different machinery or equipment type**, before delivering sorted items to assigned working stations situated remotely of the storage structure.

('166 Patent, 12:59-13:3.)  These criticisms put the public on notice that Attabotics' patent claims were limited to grid storage systems using a single type of robot capable of traveling in three-dimensions to perform a complete storage/retrieval operation.  Attabotics cannot now use the doctrine of equivalents to capture the very subject matter it distinguished.  *Sunbeam Prods., Inc. v. HoMedics, Inc.*, 412 F. App'x 263, 268 (Fed. Cir. 2010) ("The specification of the [] patent explains what is not the claimed invention, and . . . those devices cannot infringe under the doctrine of equivalents."); *SciMed*, 242 F.3d at 1345 ("Having specifically identified, criticized, and disclaimed the [accused technology], the patentee cannot now invoke the doctrine of equivalents to 'embrace a structure that was specifically excluded from the claims.'").

In short, "as between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure."  *Freedman*, 420 F.3d at 1361 (quoting *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997)).

### B.  The Function/Way/Result Test Precludes Equivalence

Even if the all elements rule did not preclude equivalence as a matter of law, the function/way/result test would.  Under this test, equivalence requires that "the accused product performs substantially the *same function* in substantially the *same way* to achieve the *same*

*result*."  *Inner-Tite*, 2009 U.S. Dist. LEXIS 143845, at *22.[6]  "Because all three prongs of the function-way-result test must be satisfied to establish infringement under the doctrine of equivalents, the absence of any one prong is dispositive."  *Al-Site Corp. v. Bonneau Co.*, 1994 U.S. App. LEXIS 6188, at *16 (Fed. Cir. 1994).

Here, equivalence is precluded at least because Urbx's two-robot system operates in a significantly different "way" than the asserted single-vehicle claims.  Attabotics has pleaded that Urbx's system employs a TowerBot dumbwaiter to retrieve items within a shaft, lower those items to a track below the shaft, and transfer those items to a GridBot for lateral transportation.  By contrast, the claims recite a single, general-purpose robot capable of independently climbing within a shaft, retrieving an item, and conveying that item to a working station.  This is not merely a difference in technology, it is a fundamental difference in design philosophy.  The challenged claims purport to provide the uniformity of a general-purpose vehicle; the accused products pursue a strategy of division of labor.  This is not a difference of degree that might fall within the doctrine of equivalence.  It is a difference in kind, which cannot.  *See Freedman*, 420 F.3d at 1361 (reversing judgment of equivalence where the "structural difference . . . [was] not a 'subtle difference in degree,' but rather, 'a clear substantial difference or difference in kind").

Indeed, any equivalence argument that Attabotics could assert would require impermissibly addressing equivalency at the claim level, rather than the limitation level.  Attabotics would need to argue that it doesn't matter *how* storage bins are transported from shafts to working stations, only that they *are* transported.  But this would violate the fundamental principle that "the doctrine of equivalents must be applied to individual elements of the claim,

---

[6] Where there is no dispute as to the relevant facts—as is the case here—the function/way/result test is a question of law.  *E.g., Al-Site*, 1994 U.S. App. LEXIS 6188, at *16 (affirming "judgment as a matter of law in view of the absence of a genuine issue as to any material fact regarding the 'way' prong of the function-way-result test.")

not to the invention as a whole." *Warner-Jenkinson*, 520 U.S. at 29.   Indeed, as the patentees' attempts to distinguish the claims from the prior art reveal, there are many ways to retrieve packages from a storage grid.  (*E.g.*, '343 Patent, 1:30-2:44.)  The purported invention is not *the result* that items are retrieved and transported, it is *how* they are retrieved and transported. Attabotics' patent on a single-vehicle solution in no way entitles it to exclude competitors from practicing other solutions, let alone a fundamentally distinct two-robot solution.

The court in *Iris Connex, LLC v. Acer Am. Corp.* addressed a strikingly similar situation. 2016 U.S. Dist. LEXIS 118988 (E.D. Tex. 2016).  There the asserted patent required "an internal multi-position and multi-function reading head . . . with a first position [and] a second position." *Id.* at *10.  The accused devices were "tablets with a front-facing camera and a rear-facing camera."  *Id.* at *16.  The plaintiff argued the accused device's two separate cameras, when considered together as a "unified" system, met the claim limitation at least under the doctrine of equivalents.  *Id.* at *17-18.  In rejecting this argument the court found that the claimed multi-position, multi-function reading head operated in a "significantly different . . . way" than the two camera system in the accused products.  *Id.* at *77-78.  The court wrote that,

> [f]undamentally, there are really only two ways to perform such image capturing function; using a single moveable camera with multiple lensings (as recited by the claims) or using multiple fixed camera with multiple lensings.  The multi-camera software-toggling system, such as that used by the accused products, is essentially the 'fundamental opposite' of the single, multi-positional and multi-functional camera recited in the claims.

*Id.* at *77-78.  Similarly here, there are essentially two ways to retrieve items in a grid: using one vehicle that moves in three dimensions, or using multiple vehicles that each move in a limited number of dimensions.  The two approaches are fundamental opposites, not equivalents.

### C.  Courts Regularly Grant 12(b)(6) Motions on the Doctrine of Equivalents

As with literal infringement, where the pleaded facts preclude the doctrine of equivalents

courts regularly dismiss on the pleadings.  *E.g., Cumberland*, 2013 U.S. Dist. LEXIS 156834, at

*6 (dismissing under R. 12(b)(6) where "[i]nfringement under the doctrine of equivalents is

unavailable because a finding of infringement would vitiate the . . . claim limitation");

*Lighthouse Consulting Grp., LLC v. BB&T Corp.*, 476 F. Supp. 3d 532, 544-45 (W.D. Tex.

2020) ("Based on the principle of claim vitiation . . . claims for infringement . . . are

DISMISSED" under R. 12(c).); *Atlas IP. LLC v. S. Co.*, 2017 U.S. Dist. LEXIS 101256, at *23-

24 (S.D. Fla. 2017) (granting dismissal under R. 12(b)(6), explaining that "the differences . . .

are, in fact, substantial. The Court therefore concludes there is no claim for infringement under

the doctrine of equivalents"); *Eagle Pharm., Inc. v. Hospira, Inc.*, 424 F. Supp. 3d 355, 361 (D.

Del. 2019) ("grant[ing] the [R. 12(b)(6)] motion insofar as it seeks to dismiss the equivalence

claims of infringement").  Dismissal of Attabotics' equivalents claims is equally appropriate.

### III.      Amending the Complaint Would Be Futile

Because the deficiency of Attabotics' Complaint is not *inartful pleading*, but pleaded

*facts* that preclude infringement, the Court should not allow Attabotics to amend its Complaint.

"Court[s] may deny a motion for leave to amend" as "futile if the proposed complaint would not

survive a motion to dismiss."  *Adams v. Wells Fargo Bank*, No. 17-12092-FDS, 2018 U.S. Dist.

LEXIS 197766, at *7-8 (D. Mass. 2018) (Saylor, J.) (quoting *Abraham v. Woods Hole*

*Oceanographic Inst.*, 553 F.3d 114 (1st Cir. 2009)).  No amendment can change the fact that

Urbx does not employ a single vehicle capable of moving in three dimensions to perform a

complete retrieval/delivery operation.  Thus, no amended complaint could pass muster under

Rule 12(b)(6).  *Healthier Choices*, 2021 U.S. Dist. LEXIS 139224, at *17 (denying leave to

amend where "the Court surmise[d] based on the clear and unambiguous language of [an exhibit

to the Complaint] that any attempt to overcome any pleading deficiencies would be futile").

Respectfully submitted,

URBX, INC.,

By its attorneys:


*/s/ Theodore J. Folkman*
Theodore J. Folkman (BBO No. 647642)
FOLKMAN LLC
53 State Street, Suite 500
Boston, MA 02109
(617) 219-7664
ted@folkman.law

Andrew D. Gish (*pro hac vice*)
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
(212) 518-7380
andrew@gishpllc.com

Marti A. Johnson (*pro hac vice*)
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
(646) 701-4458
marti@gishpllc.com

Raymond J. Bilderbeck (*pro hac vice*)
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
(646) 415-1092
ray@gishpllc.com


Dated: September 15, 2021