IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ATTABOTICS, INC.,

      Plaintiff,

v.

URBX, INC.,

      Defendant.

Civil Action No.  1:21-CV-11051-ADB

**ATTABOTICS, INC.'S MEMORANDUM IN OPPOSITION
TO DEFENDANT URBX, INC.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

I.  INTRODUCTION ......................................................................................... 1

II.  BACKGROUND ........................................................................................... 2

III.  THE COMPLAINT CANNOT BE DISMISSED UNDER RULE 12(b)(6) ..................... 4

    A.  Count I is Well Pled and Attabotics Has Not Pled Facts that Render Direct
        Infringement of the '343 Patent Implausible ......................................................... 5

        1.  Claims 12-15 Do Not Require A Single Vehicle that Travels in
            Three Dimensions ....................................................................... 5

        2.  The Cases Relied Upon by URBX Are Distinguishable from
            Attabotics' Pleadings ................................................................. 6

        3.  URBX's Intentional Ignoring of Claims 12-15 of the '343 Patent
            Attempts to Improperly Short-Circuit Case ................................................. 9

    B.  Count II is Well Pled and Attabotics Has Not Pled Facts that render Direct
        Infringement of the '166 Patent Implausible ......................................................... 11

    C.  URBX's Arguments are Premature and Fail to Consider Doctrine of Claim
        Differentiation ......................................................................................... 13

IV.  CONCLUSION ............................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACQIS, LLC v. EMC Corp.*,
No. 14-cv-13560-ADB, 2021 WL 1088207 (D. Mass. Feb. 19, 2021) ...................................... 4

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................................ 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007) ........................................ 4

*Biagro Western Sales, Inc. v. Grow More, Inc.*,
423 F.3d 1296 (Fed. Cir. 2005) ................................................................. 10

*Bos. Fog, LLC v. Ryobi Techs., Inc.*,
No. 19-cv-2310-LPS-JLH, 2020 WL 1532372 (D. Del. Mar. 31, 2020) .................................. 8

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ............................................................... 5, 6, 7

*Comark Communications, Inc. v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998) ............................................................... 10, 14

*Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.*,
No. 1:20-CV-4816-TCB, 2021 WL 3121487 (N.D. Ga. July 23, 2021) ................................. 8, 9

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
381 F.3d 1111; 72 U.S.P.Q.2d 1001 (Fed. Cir. 2004) ............................................. 15

*Laitram Corp. v. NEC Corp.*,
62 F.3d 1388; 36 USPQ2d 1206 (Fed. Cir. 1995) ................................................. 15

*Liebel-Flarsheim v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) ................................................................. 14

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) ............................................................................ 2

*Moore U.S.A., Inc. v. Standard Register Co.*,
229 F.3d 1091 (Fed. Cir. 2000) ............................................................... 16

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) ................................................................. 7

*Nazomi Communications, Inc. v. ARM Holdings, PLC*,
403 F.3d 1364 (Fed.Cir.2005) ................................................................. 14

*Phillips v AWC Corp.,*
    415 F.3d 1303 (Fed Cir. 2005) ................................................................... 10

*Primos, Inc. v. Hunter's Specialties, Inc.,*
    451 F.3d 841 (Fed. Cir. 2006) .................................................................... 15

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.,*
    No. 4:19-CV-876-SDJ, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020) .............................. 9, 15

*Robinson v. Nat'l Collegiate Student Loan Tr.,*
    No. 20-cv-10203-ADB, 2021 WL 1293707 (D. Mass. Apr. 7, 2021) ................................ 4

*SRI Int'l v. Matsushita Elec. Corp. of Am.,*
    775 F.2d 1107 (Fed. Cir.1985) .................................................................... 14

*Superguide Corp. v. DirecTV Enterprises, Inc.,*
    358 F.3d 870 (Fed. Cir. 2004) .................................................................... 14

*Teleflex, Inc. v. Ficosa North America Corp.,*
    299 F.3d 1313 (Fed. Cir. 2002) ................................................................... 14

**Statutes**

35 U.S.C. § 271(a) ................................................................................... 1

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................... 1, 4, 13

## I.    INTRODUCTION

Plaintiff Attabotics, Inc. ("Attabotics") requests that this Court deny Defendant URBX, Inc.'s, ("URBX") motion to dismiss Attabotics' Complaint and Jury Demand ("Complaint") under Federal Rule of Civil Procedure 12(b)(6). First, URBX infringed and continues to infringe claims 12 and 13 of U.S. Patent No. 10,604,343 (the '343 Patent) and all asserted claims of U.S. Patent No. 11,008,166 (the '166 Patent) under 35 U.S.C. § 271(a), a fact that URBX does not dispute in its motion. Rather, URBX's motion rests entirely on attacking claims 1-11 and 17-23 of the '343 Patent and is utterly silent as to claims 12-15. Second, as to the '166 Patent, the Complaint states a claim for direct infringement that, at this stage, easily satisfies the dictates of Fed. R. Civ. P. 12(b)(6).

### Patent '343

URBX's motion fails to address the merits of claims 12-15 of the '343 Patent in any way and, thus, their motion must be denied with respect to claims 12-15 of the '343 Patent. Specifically, in its motion to dismiss, URBX asks the Court to dismiss Count I of the Complaint with respect to claims 1-11 and 17-23 of the '343 Patent. (Mot. To Dismiss at 1, ECF 18) However, URBX's Memorandum of Law in Support of its Motion to Dismiss seeks dismissal of all claims of the '343 Patent and argues that Attabotics' factual pleading creates an implausible claim of direct infringement because the asserted patents require a fleet of identical vehicles that can travel in three dimensions. (Mem. in Supp. of Mot. to Dismiss at 1, ECF 19) They do not. URBX misleads the Court because 1) Attabotics has only identified claims 12 and 13 of the '343 Patent and 2) claims 12 and 13 of the '343 Patent do not require a fleet of identical vehicles that can travel in three dimensions to access every storage location in a three-dimensional grid and deliver items to an external working station. Thus, URBX motion to dismiss claims 12-15 of the '343 Patent must be denied.

**Patent '166**

Referring to the '166 Patent, URBX's motion also must be denied because the factual pleadings, when taken as true, establish a plausible claim of direct infringement. URBX wrongly contends that the '166 Patent claims require a single vehicle that moves in three dimensions. URBX rests on this incorrect conclusion by importing limitations from the specification into the claims and ignoring claim differentiation.

Additionally, claims 8 and 9 of the '166 Patent recites a combination of a storage system and an organized sequence delivery that the publicly available information for the URBX Market suggests would operate in a similar manner. Discovery has not begun in this case, and infringement contentions are not due. As the case proceeds, additional evidence of the URBX Market will illuminate specifics of how the organized sequence delivery is undertaken. Such considerations are premature as this stage, and URBX's motion fails because it requests the Court to improperly construe claim construction prior to *Markman* briefing. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

Because URBX has infringed and is continuing to infringe the claims of the '343 Patent and the '166 Patent, Attabotics requests that the Court deny URBX's motion to dismiss. While Attabotics agrees to dismiss certain claims now, the remaining allegations are well-pled and survive a 12(b)(6) motion.

## II.    BACKGROUND

On June 25, 2021, Attabotics filed the current lawsuit because URBX infringed and continues to infringe claims 12 and 13 of the '343 Patent by engaging in acts of direct infringement by themselves and through agents acting in combination, such agents including, for example, and without limitation, distributors, suppliers and others. Such acts infringe, either

2

literally or equivalently, at least claims 12 and 13 of the '343 patent. Claim 12 describes a storage/retrieval vehicle for use in a gridded storage structure. (Compl. ¶ 37, ECF 1)

Additionally, URBX infringed and continues to infringe all asserted claims of the '166 Patent by engaging in acts of direct infringement by themselves and through agents acting in combination, such agents including, for example, and without limitation, distributors, suppliers and others. Such acts infringe, either literally or equivalently, at least claims 1, 6, and 7 of the '166 patent. Claim 1 describes a storage system comprising a lowermost level of the gridded three-dimensional structure, a plurality of storage columns, a plurality of upright shafts, and at least one working station. (Compl. ¶ 48, ECF 1)

Attabotics developed a system that condenses a traditional warehouse into a high density, vertical storage structure with a retrieval system that can be used for various types of fulfillment centers by transforming the rows and aisles of a typical warehouse or grocery store into a vertical storage structure. The storage structure includes cells featuring multiple storage locations disposed around a central void and stacked in alignment with one another such that the central voids in each stack from a central shaft. Inside the structure, robotic shuttles can access every storage location. The robotic shuttles quickly find and pull items from designated locations. The items are then delivered to stations on the perimeter where orders are picked, packed, and shipped.

URBX offers a system known as "URBX Market," which is a vertical automated grocery fulfillment system. It is remarkably similar to, if not identical to, the Attabotics' system. The URBX Market includes storage structures having cells featuring multiple storage locations disposed around a central void and stacked in alignment with one another such that the central voids in each stack are accessible from a central shaft. In order to access the inside of the structure, URBX uses a Tower Bot to access every storage location. The Tower Bot is capable of

finding and pulling items from designated locations. Attabotics alleges, and is confident that it will prove, that URBX has violated Attabotics' patents.

## III.   THE COMPLAINT CANNOT BE DISMISSED UNDER RULE 12(b)(6)

Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action only if a plaintiff's Complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007). However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citation omitted). "In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff." *Robinson v. Nat'l Collegiate Student Loan Tr.*, No. 20-cv-10203-ADB, 2021 WL 1293707, at *2 (D. Mass. Apr. 7, 2021). "'[D]etailed factual allegations' are not required, but the complaint must set forth 'more than labels and conclusions.'" *Id*. "The alleged facts must be sufficient to 'state a claim to relief that is plausible on its face." *Id*.

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly. Thus, 'if any claim limitation is absent from the accused device, there is no literal infringement as a matter of law.'" *ACQIS, LLC v. EMC Corp.*, No. 14-cv-13560-ADB, 2021 WL 1088207, at *3 (D. Mass. Feb. 19, 2021) (quoting *Becton, Dickinson and Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010)).

Under Fed. R. Civ. P. 12(b)(6), where a Plaintiff's pleaded "factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a

plausible claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) (emphasis in original). Accordingly, "a patentee may subject its [infringement] claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Id*. at 1346. Such is not the case in Attabotics' Complaint.

**A.      Count I is Well Pled and Attabotics Has Not Pled Facts that Render Direct Infringement of the '343 Patent Implausible**

The Complaint specifically identifies claims 12 and 13 of the '343 Patent as being infringed by URBX Market.  The Complaint does not identify claims 1-11 and 17-23.

1.      Claims 12-15 Do Not Require A Single Vehicle that Travels in Three Dimensions

The pleaded facts establish literal infringement by URBX of claims 12 and 13 of the '343 Patent. URBX states that the "claims" of the '343 Patent "expressly and repeatedly state that the purported invention is a storage grid using a single type of all-purpose vehicle capable of moving between shafts (*i.e.*, in the XY-plane) and vertically within shafts (*i.e.*, along the Z-axis). However, the claims of the '343 patent that URBX infringed and continues to infringe do not include the above language. Independent claim 12 of the '343 patent is as follows:

> A storage/retrieval vehicle for use in a gridded storage structure comprising at least one stack of storage cells in which each storage cell comprises four storage locations situated on four different sides of an upright central shaft of said stack for storing respective storage units within said storage locations in a manner accessible from said upright central shaft by the storage/retrieval vehicle, said storage/retrieval vehicle comprising a rotatable turret and an extendable arm selectively extendable to a deployed position reaching outwardly beyond a perimeter of said turret, said turret being rotatable into four different working positions, in each of which extension of the extendable arm will deploy said extendable arm outwardly from the turret from a different respective side of the vehicle to access a respective one of said four storage locations on said four different sides of the upright central shaft of the stack of storage cells.

Independent claim 12 of the '343 Patent does not include the language URBX incorrectly accuses Attabotics of using to claim literal infringement. Intentionally or not, URBX's motion

and memo mislead the Court by stating, "every challenged independent claim of the '343 Patent expressly requires a single type of vehicle capable of moving both (1) vertically (*i.e.,* along the Z-axis) within shafts; and (2) left/right and forward/back (*i.e.,* in the XY-plane) between shafts…." (Mem. in Supp. of Mot. to Dismiss at 9, ECF 19)  This is false.

Not only has Attabotics not alleged that URBX infringed the '343 Patent claims that URBX discusses within the Memorandum, but also URBX has misled the Court in stating that all independent claims of the '343 Patent include the specific language limiting the scope of the claims to a single robot that travels in three dimensions. As this language is not included in the asserted claims, the motion to dismiss cannot be granted against claims 12-15 of the '343 Patent.

As is apparent from Attabotics detailed Complaint, it is clear that the URBX system comprises a TowerBot and a GridBot and, as such, claims 1-11 and 17-23 of the '343 Patent were not identified in the Complaint. However, to the extent that discovery demonstrates that URBX had other systems that included such limitations, Attabotics reserves the right to assert such claims.

    2.  The Cases Relied Upon by URBX Are Distinguishable from Attabotics' Pleadings

Since URBX has not moved to dismiss claims 12-15 of the '343 Patent, further discussion is not necessary.  However, to the extent URBX attempts to argue or improperly limit the scope of such claims at this early stage, it should be noted that the cases relied upon do not support URBX's Motion.

In *Bot M8 LLC v. Sony Corp. of Am.*, the plaintiff took a "kitchen sink" approach to pleading which revealed inconsistencies in the alleged infringement that was fatal to the infringement case with respect to the specific patent, the '540 Patent. *Id.* at 1354. "While a plaintiff need not prove infringement at the pleading stage,… the FAC contain[ed] too much

rather than too little, to the point that Bot M8 ha[d] essentially pleaded itself out of court…" *Id*. Here, Attabotics did not take a "kitchen sink" approach to pleading and alleged that URBX infringed claims 12 and 13 of the '343 which does not include the language URBX states the claims include. Therefore, *Bot M8 LLC* is not applicable in this instance as Attabotics did not plead factual allegations that were inconsistent with or contradict infringement.

Moreover, the court in *Bot M8 LLC* agreed with Bot M8 in regard to the analysis of the '988 and '670 Patents. *Id*. at 1355. Here, Bot M8 expressly alleged that the fault inspection program completed before the game is started and further identified specific error messages that were displayed by the PS4 when faults were detected. The court found that these allegations gave rise to a reasonable inference that the fault inspection program was completed before a game would start. *Id*. at 1355-56. The court further went on to say that the district court and Sony demanded too much at this stage of the proceedings and that Bot M8 need not 'prove its case at the pleading stage.'" (citing *Nalco*, 833 F.3d at 1350(citation omitted). *Bot M8 LLC*, *Id.* at 1356. The FAC plausibly alleged that the PS4 completed its execution of the fault inspection program before the game is started and supports those assertions with specific factual allegations. Here, Attabotics plausibly alleges that URBX infringed and continues to infringe claims 12 and 13 of the '343 Patent (as well as all asserted claims of the '166 Patent) and supported these assertions with specific factual allegations laid out in the Complaint. (Compl. ¶ 18-31, ECF 1)

Moreover, in *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (citing *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990)), the court states that "[t]he 'purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits.'"  "The plausibility standard 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence;" to support the plaintiff's allegations. *Nalco*, 883 F.3d 1350 (citing *Twombly*, 550 U.S. at 556, 127

(S.Ct 1955)). In addition, Attabotics need not "prove its case at the pleading stage" as the

complaint must place the potential infringer on notice of what activity is being accused of

infringement. *Id*. (citing *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 1296, 179 L. Ed.

2d 233 (2011); *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.,* 714 F.3d 1277,

1284 (Fed. Cir. 2013)).

Attabotics' Complaint focuses on the literal infringement of URBX of the '343 Patent on

claims 12 and 13, which is consistent with URBX's motion to dismiss where URBX asked to

dismiss claims 1-11 and 17-23 of the '343 Patent. URBX mislead the Court in its memorandum

of law in support of its motion to dismiss by stating "the claims of the Asserted Patents." URBX

is trying to combine all of the claims of both patents based on generalities into this one motion to

dismiss rather than separate out the specifics of each claim of each patent for discussion.

Similar to the arguments made above, URBX refuses to acknowledge that the Complaint

asserts claims 12 and 13 of the '343 Patent. This omission is telling and determinative of the

present motion. URBX quotes claim 11 of the '343 patent which is not a part of the Complaint

filed by Attabotics. However, in relation to claim 11 of the '343 Patent. URBX discusses

*Healthier Choices Mgmt. Corp. v. Philip Morris United States* to show that dismissal is

appropriate because Attabotics' pleading is not merely contradicted by evidence in an exhibit but

by the pleading itself. The court in *Healthier Choices* states that "[s]ince Nalco, most courts have

required only that plaintiffs put the defendant "on notice of what activity ... is being accused of

infringement" to survive dismissal. *Bos. Fog, LLC v. Ryobi Techs., Inc.*, No. 19-cv-2310-LPS-

JLH, 2020 WL 1532372, at *2 (D. Del. Mar. 31, 2020), report & recommendation adopted, 2020

WL 8079820 (D. Del. June 12, 2020) (quoting *Nalco*, 883 F.3d at 1350). In other words, they do

not have to plead facts showing that every claim limitation is met." *Healthier Choices Mgmt.*

*Corp. v. Philip Morris USA, Inc.*, No. 1:20-CV-4816-TCB, 2021 WL 3121487, at *4 (N.D. Ga.

July 23, 2021). Here, URBX has been put on notice that their activity has infringed and continues to infringe claims 12 and 13 of the '343 Patent, and therefore, *Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.* is not applicable to this case. Thus the 12(b)(6) motion fails and should be dismissed.

       3.    <u>URBX's Intentional Ignoring of Claims 12-15 of the '343 Patent Attempts to Improperly Short-Circuit Case</u>

URBX argues that this Court should reach the same conclusion as in *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.* However, the *Qwikcash* court held that a pleading defect included irreconcilable internal inconsistencies on the face of its pleading, specifically that the plaintiff's claim of direct infringement was patently implausible by presenting factual assertions that were implausible on their face and thus required dismissal. *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-CV-876-SDJ, 2020 WL 6781566, at *4 (E.D. Tex. Nov. 17, 2020).

Here, URBX has not identified any pleading defect. URBX completely ignored the fact that Attabotics' claims 12 and 13 of the '343 Patent do not require the limitations requiring a single robot to move in three dimensions, and URBX does not even discuss claims 12 and 13 in its memorandum in support of the motion to dismiss. In stark contrast to *Qwikcash*, in addressing claim 12 of the '343 Patent, Attabotics' Complaint recites specific structural limitations of a storage/retrieval vehicle which the URBX TowerBot infringes. Far from filing a Complaint with implausible or inconsistent factual assertions, Attabotics' Complaint is direct, clear, and internally consistent.

Because URBX has not addressed claims 12 and 13 of the '343 Patent in anyway, it is not necessary to further rebut why their accusations are faulty. Suffice it to say that URBX requests this Court to make factual determines about what claim terms mean without the benefit of any

claim construction and discovery and asks the Court to do so without regard to the legal standards for 12(b)(6) motions. For example, it is a tenet of patent law, that claim construction should begin with, and remain focused on, a claim's language. *Biagro Western Sales, Inc. v. Grow More, Inc.,* 423 F.3d 1296, 1302 (Fed. Cir. 2005). The Federal Circuit has repeatedly warned against "importing limitations from the specification into the claim." *Phillips v AWC Corp.,* 415 F.3d 1303, 1323 (Fed Cir. 2005); *see also, Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186 (Fed. Cir. 1998). URBX's motion requires the Court to import limitations from various and multiple different examples and embodiments into the claims in this case in a vain effort to create an argument that Attabotics has plead implausible allegations.

Attabotics did not allege in the Complaint that URBX infringed claims 1-11 and 14-20 of the '343 Patent. Attabotics recognized that those specific claims requires limitations that were not readily apparent in URBX's system. Under typical patent scheduling orders, Attabotics would have provided infringement contentions consistent with its pleading in the Complaint, namely that claim 12 is infringed by URBX and claims 1-11 and 14-20 would not have been included.

Instead of allowing the case to proceed in the in ordinary fashion, URBX tries to short circuit the case with its baseless motion. To be clear, with the benefit now of some materials from URBX, Attabotics agrees to dismiss certain claims 1-11 and 14-20. But the remaining allegations in the Complaint are more plain, and more than plausible. Attabotics maintains that URBX infringed at least claims 12 and 13 of the '343 Patent, and these allegations are set forth in a clear, consistent Complaint which, if proven, will be enough to prevail on a claim against URBX.

**B.      Count II is Well Pled and Attabotics Has Not Pled Facts that Render Direct Infringement of the '166 Patent Implausible**

In the '166 Patent, Attabotics acknowledges that certain other embodiments deploy a single robot, but, like its flanking assault on claims 12 and 13 of the '343 Patent, the asserted claims as to the '166 Patent are not directed toward such single robot system as URBX contends. For instance, an embodiment in the '166 Patent focuses on the arrangement of the storage system and the components forming the storage system. This is yet one example of the various layers of disclosures taught by the '166 Patent. ('166 Patent 2:45-59). The claims of the '166 Patent recite "one or more storage/retrieval vehicles" and "a plurality of storage/retrieval vehicles."

There still remains factual issues as to precisely how URBX system operates in regard to the '166 Patent. As shown in the link https://youtu.be/H5gB6eFHqbo, URBX Market retrieves storage items and delivers those storage items in sequences to optimize timing. (Compl. ¶ 31, ECF 1)

Shown below is a screen capture of the above YouTube link: the yellow dots are storage totes, the white dots are Tower Bots, the green dots are Grid Bots, and the blue dots are "pickstations."  In the animation, one or more storage/retrieval vehicles are conveyable in two directions over a two-dimensional area.



URBX resorts to self-serving arguments and ignores the actual limitations of the claims for both the '343 Patent and the '166 Patent. For example, URBX cherry-picks references to a "potential" drawback of the '343 Patent having to include two distinct vehicle types that separately access and then remove the target bin and to "space and material inefficiencies" in the '166 Patent to presumably imply that Attabotics has disavowed claim scope and requires a single robot. Nothing could be further from the truth. These references do not support the conclusion that URBX seeks from the Court.  Instead, these references refer to specific prior art limitations having nothing to do with a single robot that moves in three dimensions.

For example, the "potential" drawback URBX sees is, in reality, a reference to a storage system that requires two robots to operate in the same stacked area, one robot to lift up a portion of the stack and a second robot to retrieve the storage items. The bins are stacked one atop another. This is not the type of system claimed by Attabotics or used by URBX. Rather, the "space and material inefficiencies" is in reference to a system that uses a robot to retrieve a

storage item and deposit it on a conveyor to take the storage item to a working station. Again, this is not the type of system claimed by Attabotics nor used by URBX. Instead, URBX simply urges the Court to limit the scope of the claims of the '166 Patent to support their motion. This is improper and does not support URBX's motion to dismiss the case under Fed. R. Civ. P. 12(b)(6).

As another example of URBX trying to import limitations and argue that Attabotics has disavowed claim scope, URBX contends that the purported invention is not the result that items are retrieved and transported, it is how they are retrieved and transported. (Mem. in Supp. of Mot. to Dismiss at 22, ECF 20) Attabotics agrees that one part of its invention is how the items are retrieved and transported as specifically set forth in the respective claims, but unlike URBX, Attabotics does not attempt to import limitations from the various embodiments into claims that do not require such limitations. As with typical patent scheduling orders, once Attabotics provides infringement contentions, it will be apparent whether all or less than all of the claims of the '166 Patent have been asserted. But since limited information is publicly available for the URBX Market, and discovery has yet to begun, Attabotics has put URBX on notice that their activity has infringed and continues to infringe the '166 Patent, while preserving its right assert specific claims in the ordinary course.

### C.     URBX's Arguments are Premature and Fail to Consider Doctrine of Claim Differentiation

Further, without disclosing any reasons or rationale for limiting the scope of Attabotics' claims, as to the '166 Patent, URBX seeks to have this Court improperly import limitations from the specification into the claims while at the same time ignoring the surrounding claim language in violation of these basic claim construction principles. This effort too fails.

It is well established that it is improper to import additional limitations that are not part of the claim. "Though understanding the claim language may be aided by explanations contained in the written description, it is important not to import into a claim limitations that are not part of the claim. For example, a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment." *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004). Here URBX appears to limit, without articulation of the relevant standards (such as disavowal), the phrase "storage/retrieval vehicle" to a single three-dimensional movement by importing limitations from certain examples and/or other non-asserted claims, into the asserted claims. This is incorrect.

In *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186-87 (Fed. Cir. 2005), "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." However, the line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms. For instance, although the specification often describes very specific embodiments of the invention, courts have repeatedly warned against confining the claims to those embodiments. *See, e.g., Nazomi Communications, Inc. v. ARM Holdings, PLC,* 403 F.3d 1364, 1369 (Fed.Cir.2005) (claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification"); *Liebel-Flarsheim v. Medrad, Inc.,* 358 F.3d 898, 906-08 (Fed. Cir. 2004); *Teleflex, Inc. v. Ficosa North America Corp.,* 299 F.3d 1313, 1327 (Fed. Cir. 2002); *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1121 (Fed. Cir.1985).

Additionally, URBX fails to address, and its motions asks the Court to ignore the doctrine of claim differentiation. Under the doctrine of claim differentiation, courts presume that different

14

words and phrases within a claim and among claims in the same patent have a different meaning. *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1119-20; 72 U.S.P.Q.2d 1001 (Fed. Cir. 2004). Courts similarly presume that all words in a claim have meaning and that a word or phrase in the claim should not be so interpreted so as to render other words and phrases in the claim superfluous. *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006). Further, in interpreting language in one claim, the courts consider other claims in the patent. *Laitram Corp. v. NEC Corp.*, 62 F.3d 1388, 1392; 36 USPQ2d 1206, 1209 (Fed. Cir. 1995).

Attabotics patents are directed to the specific configuration and structure of the storage system, as claimed in the '166 Patent. For example, claim 1 of the '166 Patent is a storage system comprising a gridded three-dimensional structure comprising a gridded lower track layout, a plurality of storage columns, and a plurality of upright shafts. URBX contends that each set of claims includes a single vehicle that travels in three directions. However, that is not the case. Therefore, *Qwikcash, LLC v. Blackhawk Network Holdings, Inc.* is not applicable to this case as Attabotics has not given irreconcilable internal inconsistencies on the face of its pleading and the 12(b)(6) motion should be dismissed.

As another example of URBX trying to import limitations to the independent claims, URBX alleges that the '166 Patent stretches the language of claim 1 to encompass a GridBot and a TowerBot by rewriting the claim language entirely introducing two new, unclaimed special-purpose robots. (Mem. in Supp. of Mot. to Dismiss at 15, ECF 19) However, claim 1 of the '166 Patent does not include a limitation that states a single "storage/retrieval vehicle" moves in three directions. For example, claim 1 describes a storage system comprising a gridded lower track layout, a plurality of storage columns, and a plurality of upright shafts residing above the gridded lower track layout in spaced distribution over the two dimensional area of said lower layout, each

storage column being neighboured by a respective one of the upright shafts through which the storage locations of said storage column are accessible *by the one or more storage/retrieval vehicles* to place or remove the storage units to or from said storage locations of said storage column; and… whereby conveyance of the storage units between the storage locations and the working station is performable entirely *by said one or more storage/retrieval vehicles*…". ('166 Patent 23:3-54). URBX argues that Attabotics is expanding the claims to cover systems lacking the single vehicle to perform all limitations of the claim. However, the system of claim 1 includes the limitation of "one or more storage/retrieval vehicles" which would not preclude two robots achieving the claim limitations. This argument is more likely a claim interpretation argument that URBX is making but is premature at this point.

In contrast to *Moore U.S.A., Inc. v. Standard Register Co.*, the court held "that the applicant's use of the term 'majority' is not entitled to a scope of equivalents covering a minority for at least two reasons. First, to allow what is undisputedly a minority (*i.e.*, 47.8%) to be equivalent to a majority would vitiate the requirement that the 'first and second longitudinal strips of adhesive… extend the majority of the lengths of said longitudinal marginal portions. If a minority could be equivalent to a majority, this limitation would hardly be necessary…." 229 F.3d 1091, 1106 (Fed. Cir. 2000). In contrast, claim 1 of the '166 Patent claims does not present such a clear distinction and does not explicitly recite only one vehicle moving in three directions as URBX urges this Court to prematurely conclude. Therefore, the one or more storage/retrieval vehicles is not the same as a minority not being equivalent to a majority.

## IV.    CONCLUSION

For the reasons set forth above, URBX's motion to dismiss should be denied.

Respectfully submitted,

ATTABOTICS, INC.

By its attorneys,

*/s/ Christopher A. Duggan*
Christopher A. Duggan (BBO #544150)
Dana A. Zakarian (BBO #641058)
Smith Duggan Buell & Rufo LLP
55 Old Bedford Road
Lincoln, MA 01773
(617) 228-4400
Chris.Duggan@SmithDuggan.com
Dana.Zakarian@SmithDuggan.com

and

**Howard & Howard Attorneys PLLC**
David Van Dyke
200 S. Michigan Avenue, Ste 1100
Chicago, IL 60604
(312) 456-3641– direct
(312) 939-5617 – fax
dvd@h2law.com

Kristopher K. Hulliberger
450 West Fourth Street
Royal Oak, Michigan  48067-2557
(248) 723-0453– direct
(248) 645-1568 – fax
kkh@h2law.com
*Admitted Pro Hac Vice*

Date: September 29, 2021

## **CERTIFICATE OF SERVICE**

      I, Christopher A. Duggan, hereby certify that on September 29, 2021, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

                                       */s/ Christopher A. Duggan*
                                       Christopher A. Duggan