UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ATTABOTICS, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:21-cv-11051-ADB |
| | * | |
| URBX, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Attabotics, Inc. ("Attabotics") alleges that Defendant URBX, Inc.'s ("URBX") technology infringed and continues to infringe two of its patents, U.S. Patent No. 10,604,343 (the "'343 patent") and U.S. Patent No. 11,008,166 (the "'166 patent"). [ECF No. 1 ("Compl.")]. Presently before the Court is URBX's motion to dismiss. [ECF No. 18]. For the reasons set forth below, URBX's motion is <u>GRANTED</u> in part and <u>DENIED</u> in part.

I.   **BACKGROUND**

   A.   **Factual Background**

Attabotics' technology consists of a storage and retrieval system that aims to minimize a warehouse's overall footprint and increase the ease of access to stored items. [Compl. ¶¶ 9–12, 15]. In this system, storage structures are arranged around a "central void" and then stacked vertically to create a central shaft. [<u>Id.</u> ¶ 11]. The central shaft is traveled by a robotic shuttle that can access each storage structure by using a rotating turret and extendable arm to retrieve products from their storage locations. [<u>Id.</u> ¶¶ 12–13]. Once a product is pulled from its storage

1

location, the same robotic shuttle that retrieved the product delivers it to stations along the perimeter, where the product is picked up, packed, and shipped. [Id.]. Attabotics has "six live installations" in North America. [Id. ¶ 17].

On March 31, 2020, the United States Patent and Trademark Office ("USPTO") issued the '343 patent, which is titled "Storage and retrieval system" and discloses 23 claims. [Compl. ¶ 33; ECF No. 1-1 (the '343 patent)]. The USPTO issued the '166 patent, titled "Storage and retrieval systems sharing a common robotic fleet between a storage grid and external workstations," on May 18, 2021. [Compl. ¶ 44]. The '166 patent discloses 11 claims. [ECF No. 1-4 (the '166 patent)]. Both patents disclose storage and retrieval systems that are navigated by robotic vehicles. Attabotics is the current assignee of all rights in the '343 and '166 patents. [Compl. ¶¶ 34, 45].

Attabotics alleges that URBX infringes both patents by marketing and selling a technology called the URBX Market, which is also a vertical storage system. [Compl. ¶ 18]. The URBX Market is arranged in cells that are stacked to create a central shaft. [Id. ¶ 19]. URBX's vertical grid technology is also traveled by robotic shuttles, which move up and down the central shaft to retrieve products from their storage locations and then deliver the products to processing stations on the ground. [Id. ¶¶ 19–20]. URBX's technology uses two robots to carry out this process: the Tower Bot, which travels vertically along the central shaft and uses a rotatable turret and extendable arm to retrieve products, [id. ¶¶ 20–21], and the Grid Bot, which moves laterally along the ground to bring items retrieved by the Tower Bot from the central shaft to the "working stations," [id. ¶¶ 26–27, 30].

B.     **Procedural History**

Attabotics filed its two-count complaint on June 25, 2021, alleging that URBX infringed and continues to infringe the '343 patent (Count I) and '166 patent (Count II) literally and/or under the doctrine of equivalents. [Compl. ¶¶ 32–53]. On September 15, 2021, URBX filed its motion to dismiss and supporting memorandum seeking to dismiss Count I to the extent it alleges infringement of claims 1–11 and 17–23 of the '343 patent and Count II in its entirety. [ECF Nos. 18, 19]. URBX asserts that its technology, which uses two robots to select and deliver products from within the gridded storage system, cannot possibly infringe Attabotics' patents, which, in its view, only claim the use of a single robot that can move laterally and vertically. [ECF No. 19 at 5]. Attabotics opposed the motion to dismiss on September 29, 2021, [ECF No. 21], and URBX replied on October 5, 2021, [ECF No. 24]. The Court held a hearing on the motion on November 13, 2021 and took the motion under advisement. [ECF No. 26].

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial

3

experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

At the motion to dismiss stage, the pleading burden for infringement is light, but a complaint may be subject to dismissal if its factual allegations make infringement impossible. As the Federal Circuit explained,

> [u]nder Iqbal/Twombly, allegations that are merely consistent with infringement are insufficient. Where . . . the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim. As we have said before, while a plaintiff's pleading obligations are not onerous, it is possible that, in pleading its claims, a plaintiff may find it has pleaded itself out of court.

Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1354 (Fed. Cir. 2021) (internal citations and quotation marks omitted). In showing a plausible claim for relief, "[a] plaintiff is not required to plead infringement on an element-by-element basis. . . . Instead, it is enough 'that a complaint place the alleged infringer on notice of what activity. . . is being accused of infringement.'" Id. at 1352 (quoting Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017)).

## III. DISCUSSION

### A. Count I: The '343 Patent

URBX initially moved to dismiss Count I with respect to claims 1–11 and 17–23 of the '343 patent. [ECF No. 18]. Attabotics responded that it is not alleging infringement of claims

1–11 or 17–23 and has subsequently indicated that it is also not asserting infringement of claim 16. See [ECF No. 24 at 2 n.1 (URBX's reply representing that per an email from Attabotics' counsel, Attabotics agrees to dismiss claims 1–11 and 16–23)]. Accordingly, based on the agreement of the parties, URBX's motion to dismiss Count I is GRANTED while Attabotics' allegations based on claims 12–15 will proceed to claim construction. See [ECF No. 24 at 3 n.3 "[URBX] believes that claim construction may be of assistance in dispensing with certain of claims 12-15."].

      **B.**     **Count II: The '166 Patent**

URBX moves to dismiss Count II in its entirety because Attabotics' allegations, when read in tandem with the '166 patent, demonstrate that it is impossible for URBX's system to infringe any of the '166 patent's claims. [ECF No. 19 at 5]. URBX also argues that the doctrine of equivalents is inapplicable in this case and may not be utilized to save Attabotics' infringement claims. [Id. at 18].

          1.     Literal Infringement

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly. Thus, if any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." Becton, Dickinson and Co. v. Tyco Healthcare Grp., 616 F.3d 1249, 1253 (Fed. Cir. 2010) (internal quotation marks, citations, and alterations omitted).

              a.     Claim Language

URBX argues that the limitations in claims 1, 8, and 9 of the '166 patent require a single type of robot that is (1) capable of three-dimensional movement and (2) capable of performing the entire operation of transferring products from their storage location in the vertical grid to the working stations on the ground. [ECF No. 19 at 15–16]. Therefore, according to URBX, its

technology, which Attabotics has admitted utilizes two different types of robotic vehicles (the Grid Bot and the Tower Bot), literally cannot infringe the system claimed in the '166 patent. [Id. at 16]. Attabotics counters that URBX is attempting to engage in premature claim construction and that the claims as written can apply to a multi-robot system. [ECF No. 21 at 20].

      Dismissal under Rule 12(b)(6) is appropriate where the claim language expressly creates a limitation that is on its face at odds with the allegedly infringing technology or where there is no dispute as to the definition of a relevant term. See Qwikcash, LLC v. Blackhawk Network Holdings, Inc., No. 19-cv-00876, 2020 WL 6781566, at *4–5 (E.D. Tex. Nov. 17, 2020) (dismissing complaint where asserted claim disclosed a system which indisputably required a user to supply a PIN, but the plaintiff alleged that the infringing system issued a PIN to its users upon creation of a payment card); Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc., No. 20-cv-04816, 2021 WL 3121487, at *5–6 (N.D. Ga. July 23, 2021) (dismissing complaint where claim at issue required combustion, which allegedly infringing product indisputably did not perform and plaintiff offered no alternative definition of "combustion" to show that the term's meaning was disputed).

Here, the relevant language of Claims 1, 8, and 9 recites:

| Claim | Relevant Language |
|---|---|
| 1 | A storage system comprising: a gridded three-dimensional structure comprising: in a lowermost level of said gridded three-dimensional structure, a gridded lower track layout that occupies a two dimensional area on which **one or more storage/retrieval vehicles are conveyable in two directions over said two-dimensional area** . . . and a plurality of upright shafts residing above the gridded lower track layout in spaced distribution over the two dimensional area of said lower track layout, each storage column being neighbored by a respective one of the upright shafts through **which the storage locations of said storage column are accessible by** <u>the</u> **one or more storage/retrieval vehicles** to place or remove the storage units to or from said storage locations of said storage column. . .<br><br>at least one working station residing alongside the gridded three-dimensional structure and outside the two-dimensional area of the lower track layout over which the storage columns and upright shafts are distributed, said working station being joined to the gridded lower track lockout by an extension track thereof by which <u>said</u> **one or more storage/retrieval vehicles are conveyable between said working station** and said lower track layout, **whereby conveyance of the storage units between the storage locations and the working station is performable entirely by** <u>said</u> **one or more storage/retrieval vehicle** |
| 8 | A storage system comprising: **a plurality of storage/retrieval vehicles**; a gridded three-dimensional structure comprising: a gridded track layout that occupies **a two dimensional area and on which** <u>the</u> **storage/retrieval vehicles are conveyable** in two directions over said two-dimensional area . . . and a plurality of upright shafts residing above or below the gridded track layout in spaced distribution within the two-dimensional area of said track layout, each storage column being neighboured by a respective one of the upright shafts through which the storage location of said **storage column are accessible by** <u>the</u> **storage/retrieval vehicles** to place or remove the storage units to or from said storage locations of said storage column<br><br>at least one working station residing outside the two-dimensional area of the track layout within which the storage columns and upright shafts are distributed wherein: **conveyance of the storage units between the at least one working station and the storage locations in the gridded three-dimensional structure is performed solely by** <u>said</u> **storage/retrieval vehicles** |
| 9 | A storage system comprising: **a plurality of storage/retrieval vehicles**; a three-dimensional structure comprising a three-dimensional array of storage locations sized to accommodate placement and storage of storage units therein, <u>said</u> **storage vehicles being configured to navigate within said three dimensional structure** and place and retrieve said storage units to and from said storage locations; and at least one working station to which **retrieved storage units from the storage locations are conveyable by** <u>said</u> **storage/retrieval vehicles** |

[ECF No. 1-4 at 24–25 (emphasis added)].  The key dispute here is the meaning of "one or more storage/retrieval vehicles" and/or "plurality of vehicles" as used in the claims.  [ECF No. 21 at 15].  URBX argues that the claims are disclosing the use of more than one identical robotic vehicle.  [ECF No. 19 at 16; ECF No. 24 at 5].  To support this interpretation, URBX contends that the claims' usage of the antecedents "the" and "said" before "storage retrieval vehicles" makes clear that the same type of robot must travel in the vertical column, along the horizontal grid, and to the work station.  [ECF No. 19 at 17; ECF No. 24 at 5].  It bases this interpretation on "black-letter patent law" as well as "basic English."  [ECF No. 24 at 5; ECF No. 19 at 17].  Attabotics, in turn, argues that the asserted claims are not solely directed toward a single-robot system, [ECF No. 21 at 15], and that the "one or more storage/retrieval vehicles" or "plurality of vehicles" limitations do not on their face preclude a system that uses two different types of robots to retrieve and deliver packages, [id. at 20].

      The Federal Circuit has expressly cautioned against resolving issues of claim construction at the motion to dismiss stage.  Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (noting that a dispute in which "[defendant's] arguments boil down to objections to [plaintiff's] proposed claim construction" is "not suitable for resolution on a motion to dismiss").  Thus, dismissal now, without the benefit of proceeding to claim construction, would require that the Court find that Attabotics' "allegations of infringement are patently unworkable." Qwikcash, LLC, 2020 WL 6781566, at *5.  The Court finds no "self-contradictory and incoherent factual allegations," id., that would render Count II implausible on its face.  Instead, the parties have put forth competing interpretations of "one or more vehicles" and "plurality of vehicles" as used in the '166 patent's claims.  [ECF No. 19 at 16; ECF No. 21 at 15; ECF No. 24 at 5].  Although framed as an argument based on the sufficiency of the complaint,

URBX's argument is predicated on the theory that its proposed reading of the claim limitations is the correct one. See [ECF No. 19 at 18; ECF No. 24 at 5–6]. "[URBX's] objections . . . read like classic *Markman* arguments." Nalco Co., 883 F.3d at 1349. While URBX's arguments may very well carry the day as the proceeding unfolds, it would be improper for this Court to dismiss the complaint without the assistance of claim construction. See id. at 1350.

        b.      Specification's Description

In support of its motion to dismiss, URBX also argues that the language in the '166 patent's specification irrefutably shows that the claims must be read to encompass only robots that are capable of moving in three dimensions and delivering product from the storage location to the working station. [ECF No. 24 at 6]. Specifically, URBX points to the specification's description of the invention as

> a novel solution for goods-to-man order fulfillment, where a robotic storage/retrieval vehicle capable of travel in three-dimensions provides the sole means of storage unit conveyance throughout an entire order picking operation, from the initial retrieval of the storage unit from anywhere in the three dimensional space of the grid, through delivery of the storage unit to the working station.

[ECF No. 24 at 6; ECF No. 1-4 at 15]. URBX also highlights the specification's treatment of prior art techniques, which states that Attabotics' invention

> avoid[s] the space and material inefficiencies associated with prior art techniques, such as space intensive sortation conveyors, where the retrieval step is performed by one fleet of machines, and then sortation is performed downstream at a second stage of different machinery or equipment type, before delivering sorted items to assigned working stations situated remotely of the storage structure.

[ECF No. 19 at 21 (alteration in original); ECF No. 1-4 at 18–19]. In URBX's view, this discussion of prior art techniques constitutes a clear disavowal of "inefficien[t]" two-robot systems, which means that the claims must be read to disavow such a system as well. [ECF No. 19 at 20].

9

While it is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims," Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005), the Court is not currently engaged in claim construction, but is instead being asked to evaluate the sufficiency of the complaint, see Bot M8 LLC, 4 F.4th at 1352–53.  To the extent that it is even proper to consider the specification at this stage of the proceeding, the language from the specification is not clear enough on its face to warrant dismissal.  See Nalco Co., 883 F.3d at 1350 ("[I]t is not appropriate . . . to determine whether the method claimed in the [patent at issue] should be confined to the preferred embodiment, on a Rule 12(b)(6) motion, without the benefit of claim construction.").

First, unlike the specification, which references "*a* robotic storage/retrieval vehicle," the claims of the '166 patent refer to "*one or more* storage/retrieval vehicles" and "*a plurality of* storage/retrieval vehicles."  [ECF No. 24 at 6; ECF No. 21 at 15 (emphasis added)].  "Though understanding the claim language may be aided by the explanations contained in the written description, it is important not to import into a claim limitations that are not a part of the claim." SuperGuide Corp. v. DirectTV Enters., Inc., 358 F.3d 870, 875 (Fed. Cir. 2004).

Second, Attabotics disagrees with URBX's reading of the specification and argues that the language regarding potential inefficiencies "refer[s] to specific prior art limitations having nothing to do with a single robot that moves in three dimensions," and is instead intended to distinguish its technology from "a system that uses a robot to retrieve a storage item and deposit it on a conveyor to take the storage item to a working station."  [ECF No. 21 at 16–17].  These disputes are best resolved with the benefit of claim construction.  See Nalco Co., 883 F.3d at 1350.  Thus, the Court declines to dismiss the complaint based on the specification.

2. Doctrine of Equivalents

Even if the accused product does not literally infringe a claim, the patentee may still prove infringement by relying on the doctrine of equivalents.  "Under the doctrine of equivalents, 'a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product or process and the claimed elements of the patented invention.'" SanDisk Corp. v. Kingston Tech. Co., 695 F.3d 1348, 1363 (Fed. Cir. 2012) (quoting Warner–Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997)).

In support of its motion to dismiss, URBX argues that the doctrine of equivalents is inapplicable here and cannot be used to save Attabotics' claims of infringement.  [ECF No. 19 at 18].  Because the Court finds that Count II plausibly states a claim for literal infringement, it need not analyze whether Attabotics has sufficiently alleged infringement under a doctrine of equivalents theory.

**IV.   CONCLUSION**

Accordingly, URBX's motion to dismiss, [ECF No. 18], is GRANTED in part and DENIED in part.

**SO ORDERED.**

June 6, 2022                              /s/ Allison D. Burroughs
                                          ALLISON D. BURROUGHS
                                          U.S. DISTRICT JUDGE