IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ATTABOTICS, INC.,

     Plaintiff,

v.

URBX, INC.,

     Defendant.

Civil Action No.  1:21-cv-11051-ADB

## JOINT MOTION FOR ENTRY OF PROTECTIVE ORDER

Plaintiff Attabotics, Inc., and Defendant URBX, Inc., jointly move for entry of the Protective Order, attached as Exhibit 1, and the Stipulated E-Discovery Order, attached as Exhibit 2.

Respectfully submitted,

ATTABOTICS, INC.                          URBX, INC.,
By its attorneys:                         By its attorneys:

 /s/ Dana A. Zakarian                      /s/ Theodore J. Folkman
Christopher A. Duggan (BBO #544150)       Theodore J. Folkman (BBO No. 647642)
Dana A. Zakarian (BBO #641058)            FOLKMAN LLC
Smith Duggan Buell & Rufo LLP             53 State Street, Suite 500
55 Old Bedford Road                       Boston, MA 02109
Lincoln, MA 01773                         (617) 219-7664
(617) 228-4400                            ted@folkman.law
Chris.Duggan@SmithDuggan.com
Dana.Zakarian@SmithDuggan.com             and

and                                       Andrew D. Gish (pro hac vice)
                                          Marti A. Johnson (pro hac vice)
David VanDyke                             Raymond J. Bilderbeck (pro hac vice)
Howard & Howard Attorneys PLLC            Edward L. Tulin (pro hac vice)
200 S. Michigan Avenue, Ste1100           GISH PLLC
Chicago, IL60604                          41 Madison Avenue, Floor 31
(312) 456-3641–direct                     New York, NY 10010
(312) 939-5617 – fax                      (212) 518-2000
dvd@h2law.com                             andrew@gishpllc.com
                                          marti@gishpllc.com
Kristopher K. Hulliberger                 ray@gishpllc.com
450 West Fourth Street Royal Oak,         edward@gishpllc.com
Michigan48067
(248) 723-0453–direct
(248) 645-1568 – fax
kkh@h2law.com
*Of counsel*

Dated: September 15, 2022                 Dated: September 15, 2022

## CERTIFICATE OF SERVICE

    I, Dana A. Zakarian, hereby certify that on September 15, 2022, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                           /s/ Dana A. Zakarian

# **<u>EXHIBIT 1</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATTABOTICS, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>URBX, INC.,<br><br>     Defendant. | Civil Action No. 1:21-CV-11051-ADB |

## PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c), the Court hereby enters the following protective order:

1.      **Confidential Information** – Any document or thing that a party reasonably and in good faith believes to contain confidential information that is not publicly available (such as research and development, commercial, or other sensitive information) may be produced by that party with the clear and obvious designation "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."

2.      **Non-Disclosure of Confidential Information** – Any document or thing designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" may only be used to prosecute or defend this action and shall not be disclosed to (or the content discussed with) anyone other than the following persons:

     A.      As a receiving party, not more than three representatives of Plaintiff Attabotics, Inc. and not more than three representatives of Defendant URBX, Inc., who are officers or employees of the receiving party, who may be, but need not be, in-house counsel for the receiving party, provided that each such person has agreed to abide by the terms this Protective Order by signing <u>Exhibit A</u>.

B.      Outside attorneys of record in this lawsuit and their support staff (e.g., copying, document management personnel, and discovery vendors).

C.      Independent experts or consultants engaged by a party's attorneys to assist in the preparation and trial of this case who agree to abide by the terms of this Protective Order by signing Exhibit A and who are approved by the producing party pursuant to paragraph 6 below, as well as the support staff of such independent experts.

D.      Deposition witnesses who fall within one of the eligibility categories enumerated in Paragraph 8, whose testimony is being taken with respect to the document or thing, or about the subject matter of the document or thing.

E.      Court reporters, stenographers and videographers retained to record testimony taken in this action.

F.      This Court and its staff members, and the jury.

G.      Graphics, translation, design, and/or trial consulting personnel who agree to abide by the terms of this Protective Order on behalf of themselves and their staff by signing Exhibit A.

H.      Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order.

I.      Any other person with the prior written consent of the producing party.

**3.      Highly Confidential Information – Attorney's Eyes Only** – Any document or thing that a party in good faith believes to contain highly confidential or competitively sensitive information that is not publicly available (such as a trade secret, or highly confidential research and development, product design, commercial, financial, or other sensitive information) may be produced by that party with the clear and obvious designation "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY."

4.     **Non-Disclosure of Highly Confidential Information** – Any document or thing designated "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" may only be used to prosecute or defend this action and shall not be disclosed to (nor the content discussed with) anyone other than the following persons:

A.     Outside attorneys of record in this lawsuit and their support staff (e.g., copying, document management personnel, and discovery vendors) who are not involved in patent prosecution for the receiving party, and who are not involved in competitive decision-making on behalf of a party or a competitor of a party.

B.     Independent experts or consultants engaged by a party's attorneys to assist in the preparation and trial of this case who agree to abide by the terms of this Protective Order by signing Exhibit A and who are approved by the producing party pursuant to paragraph 6 below.

C.     Deposition witnesses who fall within one of the eligibility categories enumerated in Paragraph 8, whose testimony is being taken with respect to the document or thing, or about the subject matter of the document or thing.

D.     Court reporters, stenographers and videographers retained to record testimony taken in this action.

E.     This Court and its staff members, and the jury.

F.     Graphics, translation, design, and/or trial consulting personnel who agree to abide by the terms of this Protective Order on behalf of themselves and their staff by signing Exhibit A.

G.     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order.

H.     Any other person with the prior written consent of the producing party.

5.      **Disclosure and Review of Source Code** – The parties do not anticipate production of source code (e.g., computer code, scripts, assembly, binaries, object code, source code listings and descriptions of source code, object code listings and descriptions of object code) in this action. To the extent that relevant discovery in this action includes source code, the parties will submit an addendum to this Protective Order governing the disclosure and review of source code for approval by the Court.

6.      **Disclosure to Experts and Consultants** – Before any documents, testimony, or other information designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" are disclosed to an independent expert or consultant (the "proposed expert"), the receiving party shall give the producing party ten (10) days written notice of the proposed expert. The written notice shall include:

A.      the name of the proposed expert;

B.      an up-to-date curriculum vitae of the proposed expert;

C.      the present employer and title of the proposed expert;

D.      an identification of the proposed expert's past and current employment and consulting relationships, during the previous five years, including direct relationships and relationships through entities owned or controlled by the proposed expert;

E.      an identification of all pending patent applications on which the proposed expert is named as an inventor, in which the proposed expert has any ownership interest, or as to which the proposed expert has had or anticipates in the future any involvement in advising on, consulting on, preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and

F.      a list of the cases in which the proposed expert has testified at deposition or trial within the last five (5) years.

Further, the receiving party shall provide such other information regarding the proposed expert's professional activities reasonably requested by the producing party for it to evaluate whether good cause exists to object to the disclosure of designated confidential materials to the proposed expert, although such request for additional information shall not cause any expansion of the notice and objection period, unless the parties otherwise agree in writing.

If the producing party objects to the expert, the parties shall meet and confer in good faith within seven (7) days to resolve the dispute informally. If the dispute is not resolved, the party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek a protective order or other appropriate relief from the Court. No designated material or information of the producing party shall be disclosed to the expert or consultant until the issue is resolved by the parties or by the Court. An initial failure to object to a person under this paragraph shall not preclude the non-objecting party from later objecting to continued access by that person for good cause, at which point the parties will use the process set forth above for resolving the objection.

7.      **Discovery From Experts or Consultants** – Drafts of reports of testifying experts, and reports and other written materials, including drafts, of consulting experts, shall not be discoverable. Notes or outlines for draft expert reports are also exempt from discovery. No discovery can be taken from any non-testifying expert except to the extent that such non-testifying expert has provided information, opinions, or other materials to a testifying expert relied upon by that testifying expert in forming his or her final report(s), trial, and/or deposition testimony or any opinion in this case, for which such non-testifying expert will be subject to the same scope of discovery as a testifying expert. No conversations or communications between counsel and any

testifying or consulting expert will be subject to discovery unless the conversations or communications are relied upon by such experts in formulating opinions that are presented in reports or trial or deposition testimony in this case. Reports, materials, communications, and other information exempt from discovery under this paragraph shall be treated as attorney-work product for the purposes of this litigation and Order. Except as set forth herein, an expert disclosed as a non-testifying expert shall not present testimony at trial, including in person, by video or by affidavit, unless and to the extent previously agreed to in writing by the parties.

**8.** **Use of Designated Material at Deposition or Hearing** – Nothing contained herein shall be construed to prejudice any party's right to use any document or thing designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" in taking testimony at any deposition or hearing provided that the designated material is only disclosed to a person(s) who is: (i) employed by the producing party; (ii) identified in the designated materials as an author, addressee, or copy recipient of such information; (iii) although not identified as an author, addressee, or copy recipient of such designated material, has, in the ordinary course of business, seen such designated materials; (v) otherwise entitled to access designated material under paragraphs 2 or 4, or (vi) permitted access by agreement of the producing party.

**9.** **Transcripts and Briefs** – A deposition transcript or a brief may be designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" if the party or attorney making the designation reasonably and in good faith believes it contains Confidential Information (as defined in Paragraph 1) or Highly Confidential Information (as defined in Paragraph 3).

10.    **Motion Practice** – This Order does not authorize the filing of any documents under seal. If a party intends to file a document with the Court that contains or reflects, in whole or in part, information from another party produced under either the "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" designations, the filing party shall file such document under seal, or file a motion to seal such document, as required. Prior to filing a motion to seal, the filing party shall (1) identify for the producing party the particular "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" documents that are implicated in the anticipated filing, either because such documents are intended to be filed as attachments or because they are quoted or otherwise discussed within the underlying filing, and (2) afford the producing party a reasonable opportunity to identify any designated confidential information that requires redaction.

11.    **Discovery from Third Parties** – This Protective Order shall apply to discovery sought from persons or companies who are not parties to this lawsuit. Third parties may designate information produced under either the "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" designation.

12.    **Challenging "Confidential" or "Highly Confidential" Designation** – Any party that wishes to challenge the designation of any document, thing, or transcript as confidential or highly confidential under Federal Rule of Civil Procedure 26(c) may do so at any time by way of motion to this Court. The producing party shall have the burden of justifying its designation. Before filing any such motion, however, the parties shall first attempt to resolve their disagreement without Court intervention.

**13.**    **Trial Testimony** – This Protective Order shall not govern proceedings at trial. For trial, the parties will set forth a procedure in the pretrial order, subject to the Court's approval, for the handling of produced documents and things designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" that are used at trial.

**14.**    **Secure Storage, No Export** – All documents and things designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" must be stored and maintained by the receiving party in a secure manner that ensures that access is limited to the persons authorized under this Order. If the producing party has actual knowledge that a document or thing is barred from export under a specific provision of the United States Export Administration Regulations, the producing party shall so inform the receiving party when such document or thing is produced.

**15.**    **Termination of Lawsuit** – All documents and things designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY," and all copies thereof, shall either be returned to the party that produced them within 90 days of the final disposition of this action (including any appeals therefrom) or they may be destroyed with permission of the party that produced them. This provision shall not apply to documents and things the Court determines are not confidential. Notwithstanding the above, after final disposition of this action outside counsel for the parties may retain for their records one copy of the following documents, regardless of their confidentiality designation: (1) any document filed in this action (e.g., motion papers), and (2) expert reports served in this action, and all exhibits thereto. Even after the final disposition of this action, the confidentiality obligations imposed by

this Order shall remain in effect until a producing party agrees otherwise in writing or a court order otherwise directs.

16.     **Inadvertent Failure to Designate Properly** – The inadvertent failure by a Producing Party to designate a document or thing with one of the designations provided for under this Order shall not waive any such designation provided that the producing party notifies all receiving parties that such material is protected under one of the categories of this Order within fourteen (14) days of the producing party learning of the inadvertent failure to designate. The producing party shall reproduce the document or thing with the correct confidentiality designation within seven (7) days upon its notification to the receiving parties. Upon receiving the document or thing with the correct confidentiality designation, the receiving parties shall return or securely destroy, at the producing party's option, such document or thing that was not designated properly. A receiving party shall not be in breach of this Order for any use of such document or thing before the receiving party receives notice that such document or thing is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the document or thing should have been appropriately designated with a confidentiality designation under this Order.

17.     **Inadvertent Disclosure Not Authorized By Order** – In the event of a disclosure of document or thing designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" pursuant to this Order to any person or persons not authorized to receive such disclosure under this Order, the party responsible for having made such disclosure shall immediately notify counsel for the producing party whose material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The responsible disclosing party shall also

promptly take all reasonable measures to retrieve the improperly disclosed material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.

18.    **Inadvertent Production of Privileged Material** – Any inadvertent production of privilege or work product protected material shall not result in the waiver of any associated privilege (attorney-client privilege, work product doctrine, etc.). However, the disclosure of any particular material shall cease to be "inadvertent" if the receiving party notifies the producing party of the disclosure and the producing party does not request the return of the privileged matter within 10 days. Any party that inadvertently or unintentionally produces material it reasonably believes is privileged and/or protected may obtain the return of such material by promptly notifying all receiving parties and providing a privilege log for the inadvertently or unintentionally produced material. The receiving parties shall gather and return or destroy all copies of such material to the producing party.

19.    **Prosecution Bar** – Absent the written consent of a Producing Party, any outside counsel, expert or consultant of a Receiving Party who has reviewed any opposing Producing Party's materials designated "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" (other than such designated materials solely describing or relating to non-technical information) shall not, for a period commencing upon receipt of such materials and ending one (1) year following the final resolution of the action (including any appeals) engage in any Prosecution Activity (as defined below) substantially related to the subject matter of the patent-in-suit. "Prosecution Activity" shall mean: (1) preparing and/or prosecuting any patent application (or portion thereof), whether design or utility, on behalf of a patentee/applicant or assignee of a patentee's/applicant's rights, in the United States or a foreign country; or (2) preparing patent claim(s) on behalf of a patentee/applicant or assignee of a patentee's/applicant's rights. Prosecution Activity does not

include administrative tasks ancillary to the activities described above (e.g., invoicing, billing, collection, etc.). This prosecution bar (i) is personal to the individual who has reviewed the designated information and shall not be imputed to any other person or entity and (ii) shall not be triggered by an attorney's reviewing or otherwise learning the substance of his or her client's Highly Confidential information.

20.    **Miscellaneous**

A.    Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of each party to assert any applicable discovery objection or privilege.

B.    Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

C.    Notwithstanding anything to the contrary above, nothing in this Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular documents or things are confidential, which level of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

D.    Unless explicitly addressed herein, nothing in this Order shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the District of Massachusetts, or the Court's own orders.

E.    Production of any designated material by each of the Parties shall not be deemed a publication of the documents, information and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information or other material or its contents.

**SO ORDERED**

Dated: _____                _____
                                        The Honorable Allison D. Burroughs
                                        United States District Court Judge

Respectfully submitted on this 15th day of September 2022 by:

ATTABOTICS, INC.                        URBX, INC.,
By its attorneys:                       By its attorneys:

 _/s/ Dana A. Zakarian_____           _/s/ Theodore J. Folkman_____
Christopher A. Duggan (BBO #544150)     Theodore J. Folkman (BBO No. 647642)
Dana A. Zakarian (BBO #641058)          FOLKMAN LLC
Smith Duggan Buell & Rufo LLP           53 State Street, Suite 500
55 Old Bedford Road                     Boston, MA 02109
Lincoln, MA 01773                       (617) 219-7664
(617) 228-4400                          ted@folkman.law
Chris.Duggan@SmithDuggan.com
Dana.Zakarian@SmithDuggan.com           and

and                                     Andrew D. Gish (pro hac vice)
                                        Marti A. Johnson (pro hac vice)
David VanDyke                           Raymond J. Bilderbeck (pro hac vice)
Howard & Howard Attorneys PLLC          Edward L. Tulin (pro hac vice)
200 S. Michigan Avenue, Ste1100         GISH PLLC
Chicago, IL60604                        41 Madison Avenue, Floor 31
(312) 456-3641–direct                   New York, NY 10010
(312) 939-5617 – fax                    (212) 518-2000
dvd@h2law.com                           andrew@gishpllc.com
                                        marti@gishpllc.com
Kristopher K. Hulliberger               ray@gishpllc.com
450 West Fourth Street Royal Oak,       edward@gishpllc.com
Michigan48067
(248) 723-0453–direct
(248) 645-1568 – fax
kkh@h2law.com
*Of counsel*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ATTABOTICS, INC.,

      Plaintiff,

v.                                                                Civil Action No. 1:21-CV-11051-ADB

URBX, INC.,

      Defendant.

**EXHIBIT A – AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**

I,_____, declare as follows:

1.      I have read the Protective Order in the above captioned case.

2.      I promise that I will only use the documents and things designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" that are given to me for purposes of this lawsuit.

3.      I promise that I will not disclose or discuss information that I learn from documents and things designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" with anyone other than the persons described in the Protective Order.

4.      I acknowledge that, by signing this agreement, I am subjecting myself to the jurisdiction of the United States District Court for the District of Massachusetts with respect to enforcement of this Protective Order.

5.      I understand that any disclosure or use of documents or things designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY

CONFIDENTIAL – ATTORNEY'S EYES ONLY," or information learned from the documents or things, in any manner contrary to the provisions of the Protective Order may subject me to sanctions for contempt of court.

Date: _____                    _____
                                                    [Signature]

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATTABOTICS, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 1:21-CV-11051-ADB |
| URBX, INC., | |
| Defendant. | |

## STIPULATED E-DISCOVERY ORDER

Plaintiff Attabotics, Inc. ("Attabotics") and Defendant URBX, Inc. ("URBX") hereby agree that the following procedures shall govern discovery of Electronically-Stored Information ("ESI") in this case. A party's meaningful compliance with this Stipulated Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

Nothing in this Stipulated Order alters a Party's rights, obligations, and responsibilities under the applicable Federal Rules of Civil Procedure and other applicable law, nor does anything in this this Stipulated Order impose additional burdens beyond those imposed by the Federal Rules of Civil Procedure and other applicable law. The Parties reserve all objections under the Federal Rules of Civil Procedure and other applicable law for matters relating to the production of data that are not specifically addressed in this Stipulated Order.

This Stipulated Order may be modified in the Court's discretion or by agreement of the parties.

**1.     ESI Production Format.** With the exception of native files (as discussed below), all ESI shall be produced as single-page TIFF images, created with a resolution of at least 300 dots per inch (dpi), unless otherwise required in this Stipulated Order or the Protective Order, agreed upon

by the parties, or at a party's election. Color documents may be produced in JPG format in lieu of TIFF images; where produced, color JPG files should also be provided with a resolution of at least 300 dpi. Each TIFF or JPG image shall be branded with sequential Bates numbers and appropriate confidentiality designations. Each TIFF or JPG image filename shall correspond to the Bates number associated with that page. TIFF or JPG files shall show all text and images that would be visible to a user of the ESI documents.

2.    **Database Load/Cross-Reference Files.** A production should be provided with (a) a Unicode delimited data file (.dat), and (b) an Opticon image load file (.opt). The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. Each TIFF in a production must be referenced in the corresponding image load file. In addition to the metadata fields identified for production in Appendix 1 below, each .dat file shall include links to multi-page (document level) text files ("Text Path").

3.    **Text Files.** The document level Unicode described above in Paragraph 2 shall contain extractable text from the ESI. For electronic files without extractable text (e.g. scanned paper documents, PDF files without text, etc.) or documents produced with redactions, the producing party shall use optical character recognition software ("OCR") to generate text for the document. OCR generated text shall be provided for all documents without extractable text in the original native file unless the document is handwritten notes, drawings, or is otherwise not easily convertible into a searchable format. The filename for the multi-page text file shall correspond to the beginning Bates number of the document.

4.    **Metadata.** The parties agree that load files should include, where applicable, the information listed in Appendix 1, Table of Metadata Fields, set forth below. However, the parties

are not obligated to include metadata for any document that does not contain such metadata in the original with the exception of Bates fields, confidentiality designation, and custodian. The parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original.

5.      **Hi-resolution or Color Documents.** Documents shall be produced in color if the coloring conveys information necessary to the interpretation or understanding of the document. The parties agree to respond to reasonable and specific request for the production of higher resolution or color images on a document-by-document basis. Nothing in this Stipulated Order shall preclude a Producing Party from objecting to such requests as unreasonable in number, timing or scope, provided that a Producing Party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

6.      **Presentations.** The parties shall take reasonable efforts to process presentations (e.g., PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF or JPG image. Presentations may be produced in native format at the producing party's election or the receiving party's request.

7.      **Native Files.** All spreadsheets (.XLS, .XLSX, .CSV, etc.), audio and/or video files (.MPEG, .MP3, .WAV, etc.), and any files unable to be imaged shall be produced in native format. Any file produced in native format should be named to match the beginning Bates number of their corresponding entries in the database load files. Additionally, every file produced natively should be accompanied by a Bates-stamped and confidentiality-stamped TIFF placeholder indicating the document was provided in native format. A party may elect to produce any other files in native

format at its discretion. If particular documents warrant a different format, including native file formats or colored documents, the parties will cooperate to arrange for the mutually acceptable production of such documents. A party requesting to receive a document in its native format shall provide an explanation of the need for native file review on a document by document basis by identifying the document at issue by Bates number. The Producing Party shall not unreasonably deny any such request. If the parties are unable to reach an agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court.

**8.      CAD Files.** The parties anticipate production of Computer Aided Design (CAD) files that describe the hardware design of a physical component or assembly. CAD files shall be produced in native format. To the extent the software necessary to view such native CAD files is not publicly available (including for purchase or license), the producing party will work in good faith to provide to the receiving party, to the extent necessary, the software necessary to view such native CAD files (or a license to such software), to the extent that the producing party is authorized and it is reasonably feasible to do so, at the receiving party's expense. To the extent that such software or software license would require the receiving party to incur substantial costs, the parties agree to otherwise confer in good faith on alternate means of production (e.g., conversion of native CAD files into a format suitable for viewing with readily available open source or low-cost software).

**9.      Production of Hardcopy Documents.** All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format. In particular, documents that exist solely in physical hardcopy format shall be converted/scanned to images and text and produced following the same protocols outlined in Section (1) above. Proper document unitization is critical – documents converted from paper shall be produced as individual

documents – split and/or bundled documents are not acceptable. Family relationships shall be preserved with the parent document and its attachments Bates numbered sequentially and family boundaries captured and produced in the metadata fields. The metadata shall identify the custodian from whom the document was collected. The scanned image ".tif" files shall be subject to an Optical Character Recognition ("OCR") process with the OCR produced provided as the text file using the extension "TXT".

10.   **Foreign Language Documents.**

 A.   <u>Pre-existing Translations</u>. All documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing party also has an English-language version of that document that it prepared for non-litigation purposes, the producing party shall produce both the original document and all English-language versions.

 B.   <u>Discovery Responses</u>. If a foreign-language document is cited in response to an interrogatory pursuant to Rule 33(d), Fed. R. Civ. P., the producing party shall provide an English-language translation of the cited document.

 C.   <u>Prior Art</u>. If the producing party has a translation of a foreign-language document that is being produced and relied upon as prior art to the asserted patent, and the producing party intends to rely on such translation in the litigation (whether or not the translation is prepared for purposes of litigation) the producing party shall produce both the original document and the translation.

 D.   <u>Documents Used at Deposition or Trial</u>. For any foreign-language document used at deposition or trial, an English-language translation shall be produced or otherwise provided by the deposing/examining party to the defending party at least

seventy-two (72) hours in advance of when it will be used. In addition, the deposing/examining party shall produce or otherwise provide any English-language translation of a foreign-language document used at deposition or trial at least seventy-two (72) hours in advance of when it will be used.

E.   <u>Certified Translations</u>. If the producing party has a certified translation of a foreign-language document that is being produced (whether or not the translation is prepared for purposes of litigation) the producing party shall produce both the original document and the translation.

F.   <u>No Obligation to Translate</u>. Except as provided above, nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery. The parties agree to work together in good faith to resolve any issues that may arise relating to document translations.

**11.   Production of Email Documents.**

A.   <u>Timing</u>. Email production requests shall not be issued until after the parties have exchanged initial disclosures, initial infringement contentions, and initial invalidity contentions pursuant to the scheduling order in this case.

B.   <u>Search Methodology</u>. If the producing party elects to use search terms to locate potentially responsive email, it shall disclose the search terms to the requesting party. Absent a showing of good cause, a requesting party may request no more than 10 additional terms to be used in connection with the search.

C.   <u>Limitations on Search Terms</u>. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name,

are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. The parties will confer in good faith to narrow search terms where search results yield large numbers of irrelevant documents and to reach agreement on the search terms for electronic searches of the emails.

D.  <u>Modification</u>. The parties may jointly agree to modify any limits set forth above without the Court's leave. The Court shall consider contested request for additional or fewer search terms, upon showing of good cause and a distinct need based on the size, complexity, and issues of this specific case.

E.  <u>Parent and Child Emails</u>. The parties shall produce email attachments sequentially after the parent email. With respect to an email chain, the parties are permitted to produce the longest unique chain and the parties do not need to separately produce the lesser-included emails unless those lesser-included emails include unique attachments not included in the longest chain or contain a BCC recipient not shown in the longest unique chain. If a lesser-included email includes a unique attachment, then the lesser-included email must be separately produced with the attachment.

F.  <u>No Backup Restoration Required</u>. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed

processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its email discovery obligations in the present case.

       G.    <u>Voice-mail and Mobile Devices</u>. Absent a showing of good cause, voice-mails, PDAs and mobile phones are deemed not reasonably accessible and need not be collected and preserved at this stage of the litigation.

**12.**    **Databases.** Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table. These reports or data tables will be produced in a static format. The parties agree to identify the specific databases, by name, that contain the relevant and responsive information that parties produce.

**13.**    Absent a showing of good cause, the following additional categories of ESI need not be searched or preserved to comply with its discovery obligations in the present case:

- Unallocated, slack space, deleted data, or file fragments;

- Data only accessible by use of computer forensics;

- Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve;

- Data relating to online access, such as temporary internet files, browser history, file or memory caches and cookies;

- Data in metadata fields that are frequently updated automatically as part of the usual operation of a software application, operating system or network (e.g., date last opened);

- Telephone or VOIP voice messages that are not regularly stored or saved on a server;

- Instant messages that are not regularly stored or saved on a server;

- Data stored on cell phones or BlackBerry devices provided that a copy of such information is routinely saved elsewhere;

- Logs of calls made from mobile devices;

- Server, system or network logs;

- Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a report;

- Data remaining from systems no longer in use that is unintelligible on the systems in use; or

- Back-up data that are substantially duplicative of data that are more accessible elsewhere.

Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

14. **Deduplication.** Deduplication of ESI will be performed within and across custodians according to MD5Hash values at the family level. Only a single copy of an exact duplicate ESI family needs to be produced. If a Duplicate Custodian is identified, a metadata overlay will be provided identifying the Duplicate Custodian and Duplicate Custodian Filepath for the documents identified as duplicative.

15. **Production Media and Encryption of Productions.** Unless otherwise agreed, the parties have agreed that all electronic materials produced in this action will be exchanged electronically via secure file transfer, or to the extent secure file transfer is not feasible due to the size of a production or the highly confidential contents of a production, such materials shall be produced on CD, DVD, flash drive or hard drive. If the Producing Party so desires, it can encrypt or password protect the production using, for example Bitlocker or TrueCrypt, or another commonly available method. In such a case, the Producing Party shall forward the password to decrypt the production data separately from the CD, DVD, or external drive on which the production data is saved.

16. **No Waiver.** The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

17.     **Proportionality.** The parties will use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information. This includes identifying appropriate limits to discovery, including any necessary limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

**SO ORDERED**

Dated: _____         _____
                                The Honorable Allison D. Burroughs
                                United States District Court Judge

Respectfully submitted on this 15th day of September 2022 by:

ATTABOTICS, INC.                          URBX, INC.,
By its attorneys:                         By its attorneys:


 _/s/ Dana A. Zakarian_____      _/s/ Theodore J. Folkman_____
Christopher A. Duggan (BBO #544150)       Theodore J. Folkman (BBO No. 647642)
Dana A. Zakarian (BBO #641058)            FOLKMAN LLC
Smith Duggan Buell & Rufo LLP             53 State Street, Suite 500
55 Old Bedford Road                       Boston, MA 02109
Lincoln, MA 01773                         (617) 219-7664
(617) 228-4400                            ted@folkman.law
Chris.Duggan@SmithDuggan.com
Dana.Zakarian@SmithDuggan.com             and


and                                       Andrew D. Gish (pro hac vice)
                                          Marti A. Johnson (pro hac vice)
David VanDyke                             Raymond J. Bilderbeck (pro hac vice)
Howard & Howard Attorneys PLLC            Edward L. Tulin (pro hac vice)
200 S. Michigan Avenue, Ste1100           GISH PLLC
Chicago, IL60604                          41 Madison Avenue, Floor 31
(312) 456-3641–direct                     New York, NY 10010
(312) 939-5617 – fax                      (212) 518-2000
dvd@h2law.com                             andrew@gishpllc.com
                                          marti@gishpllc.com
                                          ray@gishpllc.com
Kristopher K. Hulliberger                 edward@gishpllc.com
450 West Fourth Street Royal Oak,
Michigan48067
(248) 723-0453–direct
(248) 645-1568 – fax
kkh@h2law.com
*Of counsel*

**APPENDIX 1**

**TABLE OF METADATA FIELDS**

| **Field Name** | **Specifications Field Name** | **Field Type** | **Description (Email)** | **Description (E-Files/Attachments)** |
|---|---|---|---|---|
| BegDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document |
| EndDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID (Bates number) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document. |
| EndAttach | Unique ID (Bates number) Parent-Child Relationship | Paragraph | The Document ID number associated with the last page of the last attachment to a parent email. | The Document ID number associated with the last page of the last attachment to a parent document. |
| Pages | Pages | Number | The number of pages for an email. | The number of pages for a document. |
| Confidential Designation | | Text | The confidential designation endorsed on the document. If no designation is present, a default value of "None" will be coded. | The confidential designation endorsed on the document. If no designation is present, a default value of "None" will be coded. |

| DateSent | | Date (MM / DD / YYYY format) and Time (HH:MM:SS AM/PM format) | The date and time the email was sent. | For email attachments, the date the parent email was sent. |
|---|---|---|---|---|
| CreateDate | | Date (MM / DD / YYYY format) and Time (HH:MM:SS AM/PM format) | Date and time the file was created. | Date the file was created. |
| ModDate | | Date (MM / DD / YYYY format) and Time (HH:MM:SS AM/PM format) | Date and time the file was last modified. | Date the file was last modified. |
| Author | Author Display Name (e-mail) | Paragraph | The display name of the author or sender of an email. | The name of the author as identified by the metadata of the document. |
| To | Recipient | Paragraph | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (e.g., fax recipients). |
| CC | CC | Paragraph | The display name of the copyee(s) of a email. | |
| BCC | BCC | Paragraph | The display name of the blind copyee(s) of an email. | |

| Title | Title | Paragraph | The subject line of an email. | Title of the document. |
|---|---|---|---|---|
| Subject | Subject (e-mail) | Paragraph | The subject line of an email. | The subject of a document from entered metadata. |
| Custodian | Custodian | Paragraph | The custodian of an email. | The custodian of a document. |
| Redacted | Redacted | Text (Y/N) | Indicates whether the email has been redacted. | Indicates whether the document has been redacted. |
| DOCTYPE | DOCTYPE | Text | Document type as identified by metadata associated with the native document indicating the application that created the native document (e.g., Google Docs, Microsoft Word 6.0, Gmail, Outlook Email, etc.). | Document type as identified by metadata associated with the native document indicating the application that created the native document (e.g., Google Docs, Microsoft Word 6.0, Gmail, Outlook Email, etc.). |
| MD5Hash | MD5Hash | Text | Identifying value of an electronic record that is used for deduplication. MD5 or SHA1 hash algorithms may be used but must be consistent throughout the productions and communicated to counsel. | Identifying value of an electronic record that is used for deduplication. MD5 or SHA1 hash algorithms may be used but must be consistent throughout the productions and communicated to counsel. |